OXFORD PAPER CO., APPLT.
*vs.*
ERNEST H. JOHNSON
STATE TAX ASSESSOR

Oxford.   Opinion, October 30, 1959.

*Theodore Gonya,* for plaintiff.

*Ralph Farris,*
*Richard A. Foley,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J. The State Tax Assessor levied a use tax against Oxford Paper Company, a resident corporation, which thereupon petitioned him to reconsider and abate such impost. The Assessor declined. The Paper Company paid the tax under protest and appeal to the Superior Court. The parties have in writing agreed upon the facts which in their turn induce issues of law. The case is before this court upon report for a final determination of the controversy.

The subject matter of the tax was a quantity of the chemical element, mercury, purchased without the State at retail sale during the years 1956 and 1957 by the Paper Company for use within the State in the manufacture for sale, of paper. The appellant contends that the mercury was exempt from tax within the language and intent of R. S. (1954), c. 17, §§ 2 and 4, as amended, in as much as that commodity was tangible **personal property** —

> "- - - which becomes an ingredient or component part of, or which is consumed and destroyed or loses its identity in the manufacture of, tangible personal property for later sale - - -" R. S., c. 17, § 2; P. L., 1955, c. 144.

Paragraphs 11 through 19 of the parties' agreed statement authoritatively recite the significant facts. Because of the chemistry and natural science contained we quote rather than attempt a paraphrase.

"11. Mercury is a chemical metallic element. Its molecules are monatomic. Any quantity forms a neatly rounded globule. When a globule is subdivided, it breaks up into a number of equally perfect globules, which tend to coalesce when sufficiently near to one another.

"12. Mercury is used by Appellant in its manufacturing operations in the production of chlorine and sodium hydroxide, which chemical products are used to bleach or whiten the cellulose fibers from which high quality papers are made. The chlorine and sodium hydroxide are produced for this purpose by an electrolytic process in which an electric current is passed through a solution of brine obtained by dissolving sodium chloride in water. This process is accomplished in a cell known as the Sorensen cell.

"13. In the Sorensen cell there are two chambers which are isolated, one from the other. These chambers are designated, respectively, as the 'decomposing chamber' and the 'denuding chamber'. The electrolysis or decomposition of the sodium chloride into sodium and chlorine takes place in the decomposing chamber. In order to recover the sodium and chlorine separately, it is necessary to remove one from the other, after the decomposition. This separation is accomplished by the use of mercury. The action of the Sorensen cell may be described as follows. Mercury flows through a special seal into the decomposing chamber where it spreads out over the bottom of the chamber and forms one electrode of the cell. Graphite slabs are suspended horizontally an inch or two above the mercury and form the second electrode of the cell. The saturated brine passes slowly through this chamber, forming an electrical bridge between the

mercury and the graphite slabs. When an electric current is passed through the brine, chlorine is evolved as a gas at the graphite electrode and elemental sodium is formed at the surface of the mercury. The chlorine gas is removed from the cell and conveyed to the bleaching process. The sodium forms a loose chemical combination with the mercury, known as an amalgam, and is removed with the mercury continuously, and transferred to the denuding chamber of the cell. There the amalgam of sodium and mercury comes in contact with fresh water and forms sodium hydroxide. The sodium hydroxide is then continuously removed from the denuding chamber and transferred to the bleaching process. The mercury, thus stripped of its sodium content, is returned to the decomposing chamber and the cycle is repeated.

"14. Thus, in the process described, mercury plays a threefold role: (1) as a conductor of electric current and one electrode of the cell, (2) as a temporary reactant with one of the products of decomposition, and (3) as a means of separating one of the products from the other and transporting the same.

"15. In the normal course of daily operation of the process described, some mercury is lost. This occurs in several ways, including evaporation into the atmosphere, permanent chemical combination with contaminents in the cell system, spillage, and absorption in the sodium hydroxide solution. The process thus necessitates a more or less continuous, day to day, replacement of the lost mercury.

"16. Appellant's manufacturing system, as described, requires a level of 70,000 pounds of mercury, approximately, at all times. Of this amount, approximately 5,000 pounds are replaced each year, to replace the loss which occurs as described.

"17. In whatever manner the loss of the mercury occurs, as above described, such loss as to each atom or molecule of the mercury occurs instantaneously.

"18.   The Appellant contends that under the exclusion of section 2, of the Sales Act, the mercury purchased by it for use in the process herein described is not taxable. The Appellee contends that the provisions of section 2 of the sales act do not exclude the item from the coverage of the sales and use tax for the reason that 70,000 pounds of mercury was in use in the process hereinbefore described at the beginning of the period of the assessment, and at the end of a year there was still 70,000 pounds of mercury in the trays, the loss, if any, was a day-to-day replacement as described in paragraph 15 of this Agreed Statement of Facts, and the quantity 'consumed or destroyed' would be only a percentage of any mercury purchased, and the exemption in section 2 of the Act granted in paragraph 4 of this statement of facts does not pertain to the procurement of raw materials that does not lose its identity within a year in the manufacture of tangible personal property.

"19.   It is intended hereby to submit the issue of taxability to the Court, upon the foregoing facts. If the mercury is subject to tax this appeal shall be dismissed. If not subject to tax, this appeal shall be sustained, and Appellant shall be given credit on its account for the sum of $841.00."

From the foregoing facts it becomes manifest that for this case warrant for any exclusion from the use tax of the mercury purchased must derive from either consumption or destruction or loss in identity of such mercury in the round of manufacture of tangible personal property for later sale. R. S., c. 17, § 2, as amended. Concededly the mercury does not become an ingredient or component part of the manufactured products of the appellant. Reduction in the mass of the appellant's mercury resulting from its use in the manufacturing process must be ascribed to evaporation, chemical combination with contaminants, spillage and flushing away with the sodium hydroxide solution.

In the machinery for converting raw material into paper mercury is constantly maintained by the appellant. 7% by weight of all the mercury thus utilized is lost in the process during a calendar year. That percentage is continuously being "consumed or destroyed - - - in the manufacture of tangible personal property - - -" Consumption or destruction as the terms are employed in R. S., c. 17, § 2; P. L., 1955, c. 144, connotes a loss of matter for practical purposes rather than annihilation.

Presumably to provide operating volume, level or pressure and as a necessary constant in its fabrication technique appellant perpetuates a reservoir of 35 tons of mercury in machine trays replenishing it continually, day by day with additional mercury to replace what becomes dissipated. It cannot be reliably or objectively demonstrated that decreases from loss as they occur are from that quicksilver which has been in the trays for some measured period of time or from additions latterly made. Mercury is continuously added to mercury and the increments are undistinguishably and legitimately commingled and confused with the residue of mercury previously in the trays. The very circumstances here do not permit of our pursuing any particular atom or molecule of mercury through the cycle of the milling process of the appellant and of our knowing its loss or survival. We cannot follow an atomic res, so to speak. As the liquid metal completes each circuit of function there is an unvarying experience of a diminishing return both in volume and in weight. The shrinkage is a daily recurrence and the loss by weight is demonstrable at a fixed 7% or 2½ tons during the span of 1 year. That is the practicality of the situation. If no fresh mercury were so added and adequate flowage could meanwhile be sustained the entire 35 ton aggregate would undergo a progressive diminution, become wholly expended and entirely vanish in 14 years. The equable, unvarying loss of mercury and a com-

plete impossibility of divining from what particles of the mass the waste is suffered permit of only one sensible conception. All mercury purchased for use by the appellant and added to its trays is destined for eventual consumption protracted through 14 years. Such a view is pragmatic and eliminates all abstract speculation.

Much of the perplexity of the instant difficulty has been occasioned by thinking in the term of 1 year and by an insistence that consumption or destruction of the mercury must occur within the abbreviated time of 1 year if the mercury is to merit non-taxability. To execute the provisions of R. S., c. 17 the appellee issued a regulation, R. S., c. 17, § 23, as follows:

> "Tangible personal property which is purchased for use in the manufacture of tangible personal property for later sale, and which has a normal life expectancy of less than one year in the use to which it is applied, will be considered as 'expendable' or as 'consumed or destroyed' within the meaning of the law. The question of whether items are 'consumed or destroyed' must be answered on the basis of the experience of the particular taxpayer making use of them.

> "The life expectancy spoken of is physical life expectancy as a usable item. Obsolescence does not enter into the matter. That is to say, an article with a physical life expectancy of well over a year might become obsolete within a few months. Nevertheless, it would not be considered as 'consumed or destroyed' within the meaning of the statute."

R. S., c. 17, as amended, contains no delimitations or fixation of the life expectancy of the tangible personal property in excess of which such property becomes ineligible for exclusion from the use tax.

The Assessor rests the sanction for his regulation quoted above upon the authority of two decisions of this court interpreting R. S., c. 17, *viz.*:

*Hudson Pulp and Paper Corporation* v. *Johnson* (1952), 147 Me. 444

*Androscoggin Foundry Co.* v. *Johnson* (1952), 147 Me. 452

In *Hudson Pulp and Paper Corporation* v. *Johnson, supra,* it is said:

> "- - - The assessor by regulation can neither make that which is non-taxable under the Act taxable, nor can he render that which is taxable under the Act non-taxable. It is the Act, not the assessor's regulations which determines taxability." (P. 448.)

> "- - - 'We are not charged with responsibility for the economic and social effects of taxation.' - - - If a change in the incidence of the tax is desired either for economic reasons or to simplify the administration of the Act, such change must come from the legislature. It cannot be effected by rule or regulation of the assessor, nor can it be brought about by a decision of this court." (P. 451.)

The court in the *Hudson Pulp and Paper Corporation* case had for its consideration the taxability of certain personal property —

> "- - - rendered useless after varying but relatively short periods of use; the wires having a life of one to four weeks, the wet felts six to ten days and the dry felts up to five months. After these periods the felts and wires become of no use in the paper-making business." (P. 446.)

The court in that case, no doubt, found its problem easier of solution because of the short-lived exhaustibility of the articles consumed but cannot be said to have represented that circumstantial fact of so brisk a consumption as decisive of its judgment of non-taxability.

Again, in *Androscoggin Foundry Co.* v. *Johnson, supra,* we find:

> ·"- - - No useful purpose would be served by a discussion of the specific use and length of life of *molding sand, refractories, fire clay, steel shot and grit, crucibles and snagging wheels.* All of these articles of tangible personal property are expendibles and have a relatively short use life in the foundry business. As all of these items of property will be consumed or destroyed in the manufacture of personal property for later sale by the purchaser, the purchase of none of these articles is a purchase at 'retail sale' within the meaning of the Act as interpreted by us in the *Hudson Pulp and Paper Corporation* case, supra. The appellant is not subject to a use tax with respect to any of these items. None of them were taxable within the meaning of the stipulation and the use taxes assessed with respect to their purchase must be abated." (P. 454.)

Again we detect no express or implied determination of the court that abbreviated time of consumption is a *sine qua non* of non-taxability. The court only accentuated the short use life of the materials considered as magnifying the rectitude of its specific decision.

The intention of the legislature as expressed in R. S., c. 17 categorically excludes the mercury as the appellant utilizes it from taxability as to the use tax and does so without the imposition of any reservation.

> "The fundamental rule of statutory construction is to ascertain and carry out the legislative intent. The language of the statute is 'the vehicle best calculated to express the intention' but the court will 'look at the object in view.' - -"
>
> *Acheson* v. *Johnson* (1952), 147 Me. 275, 280.

The mercury in so far as its extinction in the fabrication process is determinable by any practical theory has an endurance of 14 years. Comparably it may thus be made to appear as tangible personal property exceedingly long-lived under usage. Yet the mercury is used unceasingly with the

same steadfast daily loss. It occasions a tax problem which due to the graduated properties and varieties of substances and chattels affords us few absolute castes in classification but necessitates a relating of the varying degrees of expendability amongst industrial items. Plainly, however, the mercury has sufficient characteristics in common with the personal property adjudged non-taxable by the *Hudson Pulp and Paper Company* and *Androscoggin Foundry Co.* cases, *supra,* to group itself with such expendables in contradistinction to the factory machines and tanks, etc. Its status is analogous to that of lubricating grease rather than to that of the engine itself. Such being so the Legislature has fixed no time limits as a test or norm of expendability or durability.

The effects of our conclusion upon the incidence of the tax or its administration are not for us to weigh.

> "Our duties are judicial in nature. We must guard against trespassing upon the fields of the legislative and executive branches of government. We are not charged with responsibility for the economic and social effects of taxation. Our task is to ascertain and to give effect to the intention of the legislature."

> *Coca-Cola Bottling Plants, Inc.* v. *Johnson* (1952), 147 Me. 327, 332.

The regulation of the Assessor for administrative purposes prescribes a life expectancy stricture which has the virtue of being definite. Some containment of the life expectancy of excludable, usable items for clarity in the law may well be highly desirable if not necessary but it is an enlargement and positive addition to the statute. Let us suppose that as was a fact in *Hudson Pulp and Paper Company* v. *Johnson, supra,* P. 446, a dry felt now in industrial function has a present use life of five months but that a manufacturer should succeed in producing commercially one

which normally survives two years of usage. Would the improved article thereby forfeit its exclusion from the use tax? What time limit can there be? The Legislature has afforded us none and only the Legislature can constitutionally fill the void resulting from such an omission.

In our opinion the appellant has sustained its burden of proving that its transaction in purchasing the mercury is not taxable. R. S., c. 17, § 9.

The entry must be:

> *Appeal to Superior Court sustained. Judgment for appellant for $841.00 without costs.*
>
> *Tax abated to that amount.*
>
> *Case remanded to Superior Court for decree in accordance with this opinion.*