MILLER, Judge
(dissenting).
The majority finds the issue to be whether P.P.G.’s graphite is processed into tangible personal property. Since 60% of the graphite ends up (as waste) in the product stream, the affirmative answer is reached. On this premise the majority finds P.P.G.’s use of graphite to fall within an exception to the imposition of the sales or use tax. I respectfully dissent.
The issue is: Does the graphite’s presence (U/2 to 2% oxides of carbon by vol *542 ume) in the chlorine increase the sales potential of the product? The issue is not whether or not carbon is present in the chlorine. The majority does not reject the trial court’s apt factual summary: “Oxides of carbon are not a recognizable, integral part of chlorine. Also, their presence is not beneficial to chlorine. They are foreign to the nature of chlorine, simply because they are not chlorine molecules. It is not the CO2 (or CO) that is sold at retail, but the chlorine, the desired product, that is sold at retail. The oxides of carbon are with the chlorine as extraneous, unwelcome and useless extra ingredients. They would be kept out of the chlorine if it were economical and feasible to keep them out. The court cannot say that these graphite blades were ever intended to be in the product stream, and therefore, by statutory definition and not exclusively by the Collector’s definition, they cannot be regarded as 'materials for further processing into articles of tangible personal property for sale at retail.’ ”
LSA-R.S. 47:302 imposes the sales tax on the “sale at retail, the use, the consumption, the distribution” of items of tangible personal property. This is the broadest possible imposition intending to reach all goods in the stream of commerce. The legislative act has reached this graphite absent some exception. P.P.G. alleges such an exception in the statutory definition of retail sales:
“Retail sale,” or “sale at retail,” means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the collector upon investigation, finds to be in lieu of sales; provided that sales for resale must be made in strict compliance with the rules and regulations. Any dealer making a sale for resale, which is not in strict compliance with the rules and regulations, shall himself be liable for and pay the tax.
The term “sale at retail” does not include sales of materials for further processing into articles of tangible personal property for sale at retail, nor does it include an isolated or occasional sale of tangible personal property by a person not engaged in such business. LSA-R.S. 47:301(10)
The three exceptions to the sales tax do not create exemptions, but insure the tax is imposed but once, and then at the last transaction in the economic chain from raw material through production to consumption. On this premise, the phrase “tangible personal property for sale at retail” is not merely descriptive but states a purposive and therefore determinative character for the exception.
The first of the three exceptions excludes sales leading to resale. This is the necessary exception if a sales tax is to be collected but once. The third exception relates to casual, occasional sales which are not part of the stream of commerce (on which the tax is levied).
The first and third exceptions are not exceptions in the sense that they carve out some area and excuse or forgive the tax. Rather they are boundaries to restrict the tax to the final transaction in the stream of commerce.
To interpret the “further processing” exception (the second exception) in the same manner, the issue is: Does the material which might or might not be taxed, add to the final price ? The price is the base for imposition of the tax. If the presence of a material has no impact on the salable value and consequently the price, it cannot accurately be said to be taxed in that sale. This implicit inclusion in or contribution to the final price is referred to by the trial judge in his use of the word “benefit.” It is respectfully submitted the majority erred in finding his reference to “benefit” was related to a non-applicable regulation. I firmly agree with the trial court — in fact, *543 the “benefit” implication is not only reasonable, it is an essential element of the design of the sale or use tax.
Except in the most superficial economics, every cost ultimately plays some role in the final price. But unless the system is reduced to a single tax, some attempt must be made to assign the kinds of taxes on materials, equipment, etc., to the corresponding roles they play in the final price. Usually production costs, after capital outlay, are divided into maintenance and material or supplies. This conceptual distinction may be blurred when materials are used in the same way as equipment (sand in sand-blasting) by the overlapping use of the word materials. However, the overlap is illusory, since the function determines its role in the final price of the product.
Chemical production is sophisticated enough to utilize a dual function of substances where possible, designing equipment on that basis. However, P.P.G.’s engineer was asked specifically if that was the case here, and was uncertain, if not evasive in his response. Tr. 2S5, 265.
Another point relating to the function of the carbon is made by the trial judge in finding its presence in the ultimate product occurs as “waste.” Tr. 239. The majority has not overturned this factual determination. As waste it plays no part in the value or price of the product to the ultimate purchaser or consumer. There is no suggestion that carbonated chlorine is more valuable or salable than pure chlorine — on the contrary, this record supports the trial court’s finding the manufacturer would remove the carbon if it was financially feasible.
The majority’s decision creates a sizea-ble loophole in the sales tax structure. The carbon is not subjected to the sales or use tax at any point in the stream of commerce.
This court’s reasoning in Frey supports this analysis. The major issue in Frey related to the containers, and whether they were “for sale.” We held the function or purpose of the containers was a factor in pricing the product and its merchandising. 262 So.2d at 136. The resolution of the “sawdust issue” is not contrary to the view expressed in this dissent. Smoked meat is not the same product as meat which is merely cooked. Smoking meat adds an ingredient which is a component of the market value. For some of the market, smoking adds value or price to meat. The cost of adding the smoke process is therefore taxed at retail as an integral part of the sale price. Carbonated chlorine does not, at least insofar as this record would indicate, import the same difference in kind from chlorine as smoked meat differs in kind and adds value to meat.
A look at jurisprudence from other states (dealing primarily with exemptions) reveals a general distinction between ingredients and expendables. Some statutes excuse the tax only on ingredients and some on both. 30 A.L.R.2d 1439-60. The Maine statute exempts a commodity “ . . . which becomes an ingredient or component part of, or which is consumed or destroyed or loses its identity in the manufacture of, tangible personal property for later sale . . . .” R.S. c. 17. § 2; P.L. 1955 c. 144.
In Oxford Paper Co. v. Johnson, 155 Me. 380, 156 A.2d 235 (1959), mercury used as a cathode in a Sorenson cell for chlorine production was found to be an expendable, not a component or ingredient. 156 A.2d at 238. The parties stipulated (156 A.2d at 237, § 15) some mercury is lost during manufacture of chlorine in “ . . . several ways, including evaporation into the atmosphere, permanent chemical combination with contaminants in the cell system, spillage, and absorption in the sodium hydroxide solution.” The graphite in the Columbia cell used by P.P. G. dissipates in substantially the same manner. It is also an expendable — not a component. Although the Maine statute differs from Louisiana’s in that it contains exemptions, the distinction between “ex *544 pendables” and “ingredients” illuminates the effect of the majority’s decision.
The majority extends the function of the exception in Louisiana’s statute from deferring imposition of a tax to exempting some items from the sales or use tax — a scheme not contemplated by the legislature. The majority excuses the tax on all graphite although P.P.G. never claimed more than 60% of the carbon found 'ts way to their final product— and then it appeared as an unmerchantable adjunct. This interpretation of the statute to include expendables represents a judicial expansion of the statute and departs from the legislature’s expressed intent.
Since there is no language in the opinion to restrict the extent of this judicially created exemption, everything used in the manufacturing process- — tools, machines, materials, etc., can be exempt. While there is initial reliance on some trace of incorporation in the final product, the forgiveness of the tax on all graphite eliminates the “incorporation” test. The majority rejected the Revenue Collector’s alternative claim for use tax on that 40% of the graphite which did not appear as carbon in the chlorine.
The trial court was imminently correct. I respectfully dissent.
FRUGÉ, J., adheres to original dissent and concurs in dissent by MILLER, J.