# GREAT NORTHERN NEKOOSA CORPORATION

v.

# STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued Sept. 11, 1987.

Decided April 26, 1988.

---

Michael R. Currie (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

Clifford B. Olson (orally), Asst. Atty. Gen., Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

The State Tax Assessor appeals from a judgment of the Superior Court (Kennebec County) setting aside a use tax assessment on eight delimbing machines purchased by Great Northern Nekoosa Corporation between June 1, 1976 and December 31, 1978. The Assessor argues on appeal that the Superior Court erred in finding that the machines qualified under the exemption for production machinery. We agree and we vacate the judgment.

Great Northern is primarily engaged in the business of producing pulp and paper. The business involves a series of steps beginning with wood harvesting operations and ending with the production of paper. We are required to determine, for use tax purposes, whether the intermediate step of delimbing the tree is part of the production process or part of the harvesting operation. During the period of time covered by the assessment, Great Northern purchased eight new Logma T–310 delimber-bunchers. The function of these machines and their relationship to the entire process can be briefly summarized as follows: A tree is cut by chainsaw or harvester and transported by skidder to a pile at the side of the logging road. The delimbing machine removes the severed tree from the pile and cuts off the top of the tree and all limbs. The result is a log at least 12 feet long, 4 inches in diameter, with all limbs cut flush to the trunk. A log cut to such specifications is suitable for further cutting into shorter lengths (slashing), the removal of bark (debarking) and conversion to wood pulp (chipping or grinding).

When Great Northern purchased the first two of the eight delimbers, the exemption for production machinery provided as follows: "no tax on ... use shall be collected upon or in connection with ... sales of new machinery or equipment for use by the purchaser directly and primarily in the production of tangible personal property ...." 36 M.R.S.A. § 1760(31) (1973). By regulation, the Assessor defined the terms of the statute and distinguished machines used in the procurement of raw materials and machines used in the conversion of raw materials primarily on the basis of their location. As applied to the paper industry, the regulations provided that machinery used in connection with activities traditionally or contemporarily performed in the woods were subject to a use tax, whereas machinery used in connection with activities traditionally or contemporarily performed at the mill site were exempt. Under this regulation, the delimbers purchased by Great Northern would be taxable because of their location in the woods.

In 1977, the Legislature for the first time adopted definitions relevant to the exemption for production machinery as follows:

"Directly" ... refers to those activities or operations which constitute an integral and essential part of production, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to production.

36 M.R.S.A. § 1752(2–A).

"Production" means an operation or integrated series of operations engaged in as a business or segment of a business which transforms or converts personal property by physical, chemical or other means into a different form, composition or character from that in which it originally existed.

Production includes manufacturing, processing, assembling and fabricating operations which meet the definitional requisites.

Production does not include biological processes, wood harvesting operations, the severance of sand, gravel, oil, gas or other natural resources produced or severed from the soil or water, or activities such as cooking or preparing drinks, meals, food or food products by a retailer for retail sale. The foregoing are examples of activities that are not included within the term "production."

36 M.R.S.A. § 1752(9–B).

Focusing on the first paragraph of subsection 2–A, Great Northern persuaded the Superior Court that the 1977 amendment rejected the interpretative regulations of the Assessor and clarified the Legislature's intent to distinguish production machinery strictly on the basis of function rather than location. Thus, the Superior Court found that both the two delimbers purchased before the amendment of the statute and the six purchased after are used "directly and primarily in the production of paper" and are therefore exempt from taxation.

We need not decide whether the 1977 amendment should be given retroactive effect, nor do we need to decide whether the delimbers qualify functionally as part of the production process defined in the first paragraph of subsection 2–A. Even if we assume that the 1977 amendment was intended to apply retroactively, the delimbers purchased before and after the effective date of the amendment remain taxable because wood harvesting operations are specifically excluded from the definition of production by the third paragraph of section 1752(9–B). Although the amended statute does not define "wood harvesting operations", we are required to give words their "plain and natural meaning" and construe them in accordance with their "natural import in common and approved usage." *Moyer v. Board of Zoning Appeals,* 233 A.2d 311, 317 (Me.1967). Whatever the exact parameters of wood harvesting operations may be, the plain and natural meaning of the term includes not only the cutting of the tree, but the removal of the limbs as well. Whether a severed tree is used for lumber, pulp or firewood, the branches are customarily removed as part of the harvest operation. We are mindful of the fact that significant changes have occurred in the pulp and paper industry. Mobile equipment now performs functions in the woods that would previously have occurred only at the mill site. Notwithstanding the miracles of modern technology, however, removing the limbs from a tree remains a part of wood harvesting.

The entry is:

Judgment of the Superior Court vacated.

Remanded with instructions to affirm the assessment issued by the State Tax Assessor.

McKUSICK, C.J., and GLASSMAN, SCOLNIK and CLIFFORD, JJ., concur.

NICHOLS, Justice.

I concur in part with, and dissent in part from, the majority opinion.

I agree that with reference to the first two delimbers purchased by the Plaintiff manufacturer the judgment of the Superior Court should be vacated. I share the view that a locational test governs as to those earlier purchases.

I do not agree to vacating the rest of the judgment that pertains to the subsequent purchases of delimbers, the taxability of which is governed by an amended statute.

It is a functional, rather than a locational, test that now must be applied.

The plain meaning of this statute exempts all activities which are an integral and essential part of the process by which personal property is transformed or converted into a different form, composition or character. 36 M.R.S.A. § 1752(9–B) (Supp. 1987). The key here is the delimbers' function in transforming or converting personal property. Only by reference to the Defendant's prior regulations does one derive a locational test. Such a reference might be necessary if the statute were ambiguous. *State v. Millett*, 392 A.2d 521, 525 (Me.1978). There is no such ambiguity, and therefore I apply the plain meaning of the statute's functional test.

The delimbers meet this functional test. The necessity of them in sizing the logs for further processing in the debarkers, chippers and slashers renders the delimbers an essential and integral part of production. 36 M.R.S.A. § 1752(2–A) and (9–B) (1978 & Supp.1987). Production includes delimbing because delimbing physically transforms a whole tree and its limbs not committed to chipping into specifically sized logs for further processing into pulp. 36 M.R.S.A. § 1752(9–B) (Supp.1987).

Applying this functional test, I conclude that machinery used in wood harvesting operations is excluded from the tax exemption whenever it does not change the form, character, or composition of tangible personal property. Those operations are not "production." However, delimbing does change the form, composition and character of the wood in a manner that facilitates pulp production. It is production and therefore not a harvesting operation. I submit, therefore, that delimbing machinery now qualifies for exemption from the use tax under 36 M.R.S.A. § 1752(9–B)(¶ 3) (Supp.1987).

I cannot join the majority when it gives no effect to the changes the Legislature wrought in 1977. The majority concedes that a functional test must be used to define "production" pursuant to the first sentence of 36 M.R.S.A. § 1752(9–B), yet the majority fails to apply the functional test to define "wood harvesting operations" pursuant to the third sentence of the same section. This failure is a clear violation of our rule to construe multiple statutory provisions consistently and harmoniously. *Faucher v. City of Auburn*, 465 A.2d 1120, 1124 (Me.1983).

We have long recognized the rule that all acts *in pari materia* should be construed together. *State v. Frederickson*, 101 Me. 37, 41–42, 63 A. 535, 536–37 (1905). It is a rule that should be carefully followed when interpreting two sentences of a single statute in order to reach a consistent and harmonious result. *Delano v. City of South Portland*, 405 A.2d 222, 227 (Me.1979).[1]

In sum, the Superior Court should be sustained in its judgment that the Plaintiff's purchases of delimbers since 1977 are not taxable.

---

**1.** Professor Dickerson, while not espousing the "plain meaning" rule of statutory construction, definitely favors the "whole statute rule" that statutes *in pari materia* enacted by the same jurisdiction are to be read in relation to each other. R. Dickerson, *The Interpretation and Application of Statutes* 233 (1975).