

STATE OF MAINE   SUPERIOR COURT
CUMBERLAND, ss.                      CIVIL ACTION
                                     DOCKET NO. AP-05-009

MAIETTA CONSTRUCTION,
INC.

Plaintiff

v.                                   ORDER ON PLAINTIFF'S
                                     MOTION FOR
                                     SUMMARY JUDGMENT
STATE TAX ASSESSOR

Defendant

Before the court is plaintiff Maietta Construction, Inc.'s ("Plaintiff")

motion for summary judgment on Plaintiff's appeal[1] of defendant State Tax

Assessor's ("Assessor") denial of Plaintiff's request for reconsideration of a use

tax assessment.

## BACKGROUND AND UNDISPUTED FACTS

On February 13, 2004, the Assessor charged Plaintiff with an unpaid use

tax in the amount of $32,237.50, plus interest in the amount of $6,014.71, plus

penalties in the amount of $7,484.38, for a total of $45,836.59. This assessment

covers the period from December 1, 2000 to November 30, 2003. Plaintiff

requested reconsideration of the assessment, which was denied. Plaintiff has

timely appealed this decision to the Superior Court.

---

[1] Plaintiff's appeal is taken pursuant to 36 M.R.S.A. § 151. This section requires a person who wishes to contest a tax assessment to first request reconsideration with the State Tax Assessor. The assessor conducts an informal review that is not an adjudicatory proceeding. Accordingly, although this is an appeal of a governmental decision, there is no record for review. Rather than proceeding under M.R.Civ.P. 80C, the court has allowed the parties to proceed in this action as under any other civil action.

1

In the assessment and reconsideration, the Assessor found that four pieces of equipment, a D250E truck, a McCloskey screening plant, a D8R bulldozer, and a 277 loader (collectively, "the Equipment"), were not primarily used in production so as to be exempt from the use tax under 36 M.R.S.A. § 1760(31). Plaintiff uses the screening plant to screen raw earth excavated from its quarries into loam, sand and rock. The truck is used to transport the raw earth from storage piles to the screening plant, and to move screened materials from the screening plant to a rock crusher[2] or to other storage piles. The bulldozer is also used to push raw earth from storage piles to the screener, and to push screened materials from the screening plant to the rock crusher or to other storage piles. The loader is used to load raw earth into the screener, and to load uncrushed rock into the rock crusher. The Plaintiff then uses these materials in its construction and landscaping projects. The parties dispute whether and how much of these materials are sold as tangible, personal property as opposed to being integrated into real property prior to being sold.

## DISCUSSION

### I.    Standard of Review

Pursuant to 36 M.R.S.A. § 151, The Superior Court conducts a de novo hearing and makes a de novo determination of the merits of Plaintiff's case. When construing a statute, the court seeks to effectuate the intent of the Legislature. *See Foster v. State Tax Assessor*, 1998 ME 205, ¶ 7, 716 A.2d 1012, 1014. This is ordinarily gleaned from the plain language of the statute. *Id.* However,

---

[2] According to the Assessor's decision on reconsideration, the rock crusher is statutorily recognized as engaged in production. Apparently, this is why the crusher was not the subject of a use tax assessment, along with the other equipment at issue. *See* Reconsideration Decision at p. 2.

the history of a statute, including its legislative history and the history of amendments to it, is also relevant in determining the Legislature's intent. *See Harold MacQuinn, Inc. v. State Tax Assessor*, 415 A.2d 818, 820 (Me. 1980).

The particular exemption at issue in this case, 36 M.R.S.A. § 1760(31) ("Exemption") was intended as an inducement to manufacturers to bring new machinery into Maine, and to make the climate more favorable for business. *See MacQuinn* at 821 (quoting 1973 Me. Leg. Rec. 3156 (May 22, 1973)). However, the history of amendments to the Exemption indicates a legislative intent to keep a tight rein on its application. *Id.* at 820-21; 36 M.R.S.A. § 1752(9-B). Accordingly, Plaintiff has the burden of establishing before this court that the exemption it claims is unmistakably within the spirit and intent of the statute. *See id., see also Foster*, 1998 ME 205 at ¶ 8.

## II.    The Assessed Tax and the Claimed Exemption

Under the Maine Sales and Use Tax law, "A tax is imposed... on the storage, use or other consumption in this State of tangible personal property... the sale of which would be subject to tax under § 1764 or § 1811." 36 M.R.S.A. § 1861. The Exemption, however, lifts tax that would otherwise be applied to "sales of machinery and equipment... [f]or use by the purchaser directly and primarily in the production of tangible personal property intended to be sold or leased ultimately for final use or consumption."

The Assessor takes the position that, during the assessment period, the Equipment was not used in "production," but rather, merely to derive natural resources from Plaintiff's quarries. According to the Assessor, the process of screening neither "transforms" nor "converts" the earth into another form, as

3

every component of the earth that was severed from the Plaintiff's realty remains the same after the screening process as it was before. Reconsideration Decision at p. 3. Plaintiff argues, however, that the Equipment creates valuable products—loam, sand, and rock—out of valueless earth.

Plaintiff's distinction is meaningful. The screening plant, at least, is equipment used in the production of tangible, personal property. "Production" is "an operation... that transforms or converts personal property by physical... [and/or other] means into a different form, composition or character from that in which it originally existed." 36 M.R.S.A. § 1752(9-B).[3] The screening plant physically converts undifferentiated earth into loam, sand, and rock. These products are both physically different from the earth they were produced out of and also used in applications for which the raw earth is unsuited.

Nor does any of the Equipment "sever" the loam, sand, and rock from the earth, so as to exclude it from "production." *See* 36 M.R.S.A. § 1752(9-B) (excluding "the severance of sand, gravel, oil, gas or other natural resources produced or severed from the soil or water" from the definition of "production.") The State asserts that the Equipment is used on-site at the quarries from which Plaintiff severs the raw earth, and are a part of the process

---

[3] The complete definition of "Production" under § 1752(9-B) is as follows:
"an operation or integrated series of operations engaged in as a business or segment of a business that transforms or converts personal property by physical, chemical or other means into a different form, composition or character from that in which it originally existed. "Production" includes film production.
"Production" includes manufacturing, processing, assembling and fabricating operations that meet the definitional requisites, including biological processes that are part of an integrated process of manufacturing organisms or microorganic materials through the application of biotechnology.
"Production" does not include biological processes except as otherwise provided by this subsection, wood harvesting operations, the severance of sand, gravel, oil, gas or other natural resources produced or severed from the soil or water, or activities such as cooking or preparing drinks, meals, food or food products by a retailer for retail sale.

4

of "severing." The State draws a parallel between this case and the facts of *Great Northern Nekoosa Corporation v. State Tax Assessor. See* 540 A.2d 770, 772 (Me. 1988). In *Great Northern Nekoosa*, the plaintiff was denied an exemption for tree de-limbing equipment that the court found to be part of the "wood-harvesting operations" excluded from the definition of "production." *See id.* That case, however, interprets the phrase "wood-harvesting operations" and is inapplicable to an interpretation of "severance of sand, gravel... or other natural resources... from the soil." The plain and natural meaning of this phrase is the separation of naturally occurring sand and gravel from their original locations on the earth's surface. Here, however, the screening plant sifts already-severed earth into component parts that are distinctly different from the unprocessed earth that is put into this equipment. Plaintiff points out that it uses different equipment to excavate and blast raw materials from the earth, for which it has not sought an exemption. The screening plant is, under the plain and natural meaning of the statute, engaged in "production," not "severance." *See Great Northern Nekoosa Corporation*, 540 A.2d at 772 (stating, "we are required to give words their plain and natural meaning and construe them in accordance with their natural import in common and approved usage.")

The Assessor also makes a subsidiary argument, that the truck, bulldozer, and loader were not, in their own right, engaged in "production," but were merely used to bring soil to the screening plant or rock to the rock crusher, and to take loam, sand, and rock away from the screening plant for subsequent crushing or storage. The Exemption requires that equipment be used "directly" in the production of tangible, personal property. "Directly" is statutorily defined as "those activities or operations which constitute an integral and essential part

5

of production, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to production." 36 M.R.S.A. § 1752(2-A).

Instructional Bulletin No. 22 of the Maine Revenue Services Sales, Fuel, & Special Tax Division[4] provides some examples of operations that are "integral and essential to production" and those that are "incidental" and therefore not involved in "production." Equipment used in "storage and warehouse operations" is incidental. However, equipment that handles or moves materials from one production machine to another, or between a production operation and a temporary holding area prior to further production, such as a forklift that is used to move lumber from a planer to a sanding machine, or a conveyor system that moves materials from one production machine to another or from a storage pile at the point of receipt to the first production machine, is involved in production. This equipment is directly used in production, as it is all involved in on-site movement of materials to and from the screener and rock crusher. Although the machinery is also used to transport loam, sand, and crushed rocks into storage piles after these materials have been produced, this operation cannot be separated from the clearing of processed materials away from the screener and crusher, necessary to move more materials for processing into these machines. Accordingly, all of the Equipment is engaged in "production."

The analysis does not end here, however. The Assessor also argues that Plaintiff has not shown that it used the Equipment "primarily" in the sale of

---

[4] In their arguments, both parties have adopted the instructional bulletins issued by Maine Revenue Services, specifically, Bulletin Nos. 4, 22, and 28 of the Sales, Fuel, & Special Tax Division; accordingly, the Court accepts their examples and explanations with regard to the controlling statutes and rules.

tangible, personal property. Specifically, the Assessor claims that Plaintiff has failed to meet its burden of proof that it passed title to more than 50% of the loam, sand, or rock prior to using these materials in its construction and landscaping projects. *See* 36 M.R.S.A. § 1752(9-A) (defining "primarily" as "more than 50% of the time."), Bulletin No. 22 at p. 10. According to Bulletin No. 22, the Exemption applies only to equipment that is used to produce *and* sell "tangible, personal property." Bulletin No. 22 provides the following example:

> A cabinetmaker who produces and installs kitchen cabinets and passes title to the cabinets after installation, is selling real property, not tangible personal property. The cabinetmaker's purchase of machinery and equipment thus does not qualify for exemption.
> A cabinetmaker who produces and installs kitchen cabinets and passes title to the cabinets before installation is engaged in selling tangible personal property. The cabinetmaker's purchase of machinery and equipment would therefore qualify for exemption.

*Id.* The Assessor does not dispute that the loam, sand, and rock at issue can sell for between $10 to $14.75 per yard. Plaintiff's Statement of Material Facts, ¶ 7 and Assessor's Opposing Statement of Material Facts, ¶ 7. Thus, these products are capable of sale as tangible, personal property. However, Plaintiff must show, not only that these materials are tangible, personal property at some point in time, but that it passed title to more than 50% of these materials prior to their becoming integrated into real property. *See id.* Plaintiff claims that, of a maximum annual production capacity of 80,000 – 100,000 cubic yards of loam, sand, and crushed rock, it sold at least 64,631 cubic yards as tangible, personal property in the year 2001, 50,715 cubic yards as tangible, personal property in 2002, and 57,940 cubic yards as personal property in 2003. While the Assessor accepts the stated maximum production capacity, it asserts that Plaintiff has not provided adequate documentation that it sold the quoted amounts as tangible,

personal property. This is a disputed issue of material fact that forecloses summary judgment on either party's behalf. The court shall receive evidence and arguments, and make a de novo factual determination on this issue.

## II. The Assessed Penalty

Plaintiff argues, that, even if the use tax was properly assessed, it had substantial authority justifying its failure to pay the assessed amount. However, the law governing the assessment of use tax against Plaintiff is sufficiently clear that, if Plaintiff fails to demonstrate as a factual matter that it sold more than 50% of its processed loam, sand, or crushed rock as tangible, personal property, the penalty assessed against it is also proper. *See* Bulletin No. 22 (explaining that manufacturing equipment is not exempt if the materials it produces are not sold as tangible, personal property.)

## RECOMMENDATION

Plaintiff's motion for summary judgment is DENIED. Assessor's motion for summary judgment is also DENIED. The parties dispute whether Plaintiff sold more than 50% of the loam, sand, and crushed rock produced by its equipment in the form of tangible, personal property. The court will take evidence on this issue. The assessment of penalties will be upheld if Plaintiff fails to demonstrate that it sold more than 50% of its product during the assessment period as tangible, personal property.

Dated at Portland, Maine this _9th_ day of _May_ , 2006.

Robert E. Crowley
Justice, Superior Court

8

Date Filed 02/16/05     CUMBERLAND     Docket No. AP-05-9

                              County

Action   80C APPEAL

MAIETTA CONSTRUCTION, INC.              STATE TAX ASSESSOR

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JONATHAN A. BLOCK, ESQ. (MAIETTA)<br>SARAH J. MARBLE, ESQ. (MAIETTA)<br>1 MONUMENT SQUARE<br>PORTLAND, ME 04101-1110<br>791-1100 | ~~E. Mary Kelly, Esq.~~ Pamela W. Waite AAG<br>Office of Attorney General<br>6 State House Station<br>Augusta, Maine 04333-0006 |

Date of