HUDSON PULP AND PAPER CORPORATION
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Kennebec.   Opinion, April 14, 1952.

*Locke, Campbell, Reid & Hebert,* for plaintiff.

*Alexander A. LaFleur, Attorney General,*
*Boyd Bailey, Assistant Attorney General,*
*Miles P. Frye, Assistant Attorney General,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MERRILL, J.   On report.   This case is an appeal to the Superior Court for the County of Kennebec from a decision of Ernest H. Johnson, state tax assessor, declining to abate taxes.   The assessor levied a use tax upon certain lubricating oils and greases used to lubricate machinery, and certain wires, wet felts and dry felts used upon paper machines, all purchased by the appellant for use in its business as a manufacturer of paper.   Proper procedure was followed to obtain a reconsideration and abatement of the assessment in question by the assessor, and to bring the case before the Superior Court on appeal.   See P. L., 1951, Chap. 250, Secs. 29 and 30.   In the Superior Court the case was reported to this court for final determination.   By the terms of the report it is agreed that there is only one issue and that is "Is the purchase by the appellant, the taxpayer, of wires, wet felts and dry felts (all paper machine clothing) and lubricants a purchase of 'tangible personal property which becomes an ingredient or component part of, or which is consumed or destroyed or loses its identity in the manufacture of, tangible personal property for later sale by the purchaser . . .' within the meaning of the fourth sentence of the definition of 'retail sale' or 'sale at retail,' Section 2, Chapter 250, P. L., 1951?"

By Chapter 250 of the Public Laws of 1951, the legislature enacted Chapter 14-A of the Revised Statutes known as the "Sales and Use Tax Law," hereinafter called the Act.

The lubricating oils and greases used to lubricate the machinery, and the wires and felts used in connection with and on the machinery employed to manufacture paper, were all expendibles.   By being used in connection with the papermaking machinery and during the process of making paper, they will be consumed or destroyed within the meaning of those terms as used in Section 2 of the Act.   As to the oils and greases it is self evident that their use for the intended purpose destroys them.   True it is that the wires and felts

are not completely annihilated by the intended use, but as a result of chemical action and mechanical abrasion both wires and felts are rendered useless after varying but relatively short periods of use; the wires having a life of one to four weeks, the wet felts six to ten days and the dry felts up to five months. After these periods the felts and wires become of no use in the paper-making business.

We hold that these articles of personal property by use for the purposes intended are consumed or destroyed within the meaning of those words as used in the Act. However, the fact that these articles of personal property are either consumed or destroyed is not necessarily determinative of the issue. They must not only be consumed or destroyed but they must also be consumed or destroyed *in the manufacture of tangible personal property* for sale.

So much of Section 2 of the Act as is pertinent to the question at issue is as follows:

> " 'Retail sale' or 'sale at retail' means any sale of tangible personal property in the ordinary course of business, for consumption or use, or for any purpose other than for resale in the form of tangible personal property. \* \* \* \* \* 'Retail sale' and 'sale at retail' do not include the sale of tangible personal property which becomes an ingredient or component part of, or which is consumed or destroyed or loses its identity in the manufacture of, tangible personal property for later sale by the purchaser, but shall include fuel and electricity."

Although the parties agree that the articles of personal property in question are consumed or destroyed, they are not in agreement as to whether or not they are consumed or destroyed *in the manufacture of tangible personal property* within the meaning of the foregoing provision of Section 2 of the Act.

Purporting to act under authority of Section 20 of the Act the assessor promulgated Regulation 3. This regulation, in part, declared and set forth the categories of personal property consumed or destroyed to which the exclusion from the definition of "retail sale" or "sale at retail" in Section 2 of the Act applied. The pertinent part of Regulation 3 is as follows:

> "The exemption applies to substances, as distinguished from machines or tools, affecting the physical nature of tangible personal property in the process of manufacture, but which do not enter into the final product in an identifiable form so as to be considered an ingredient or component part of the finished product. The exemption does not apply to machines, replacement parts, or tools."

By this regulation the assessor sought to divide those things which are consumed or destroyed into two categories or classes, one of which would be taxable and one of which would not be taxable. Those things which were *being acted upon* in the process of manufacture, and by being acted upon were consumed or destroyed and thus lost their identity in the end product were treated as exempt from taxation. Those things which *acted upon* the material which was being processed, even if they were destroyed or consumed, would not be exempt from the tax.

As stated in the assessor's brief: "The distinction is functional and extremely simple—as simple as the distinction between that which acts and that which is acted upon. It is possible for the most practical person—little versed in theory—to proceed rapidly through a manufacturing plant and classify what he sees as in one category or the other instantly."

To the class of non-taxable things so determined, the assessor added one other group, to wit, those things which were totally destroyed by a single use.

Desirable as the result reached by the assessor's classification may be, and despite the fact that it is logical and workable, the said classification set forth in Regulation 3 cannot be sustained. Whether or not the purchase or sale of an article of personal property subjects the purchaser to a sales or use tax, and if so to which one, depends, not upon the regulations of the assessor, but upon the Act itself. Although the assessor is authorized by Section 20 of the Act to promulgate and enforce rules and regulations, by the very terms of that section such rules and regulations must be consistent with the Act. The assessor by regulation can neither make that which is non-taxable under the Act taxable, nor can he render that which is taxable under the Act non-taxable. It is the Act, not the assessor's regulations which determines taxability.

In determining whether or not the purchase of the articles in question subjected the purchaser to either a sales or use tax, the court must give effect to the Act. The "use tax" under Section 4 of the Act is based upon a purchase "at retail sale." For the purposes of the Act "retail sale" and "sale at retail" are defined in that portion of Section 2 of the Act heretofore quoted in this opinion. In interpreting that portion of Section 2 of the Act applicable to the question here presented, the court, if possible, must give effect to every word, phrase, and clause contained therein. It is not to be presumed that the legislature used either words, phrases or clauses without reason or without meaning, or that they are used as mere surplusage.

An examination of the portion of Section 2 now under consideration shows that the assessor's classification is inconsistent with this portion of the Act. The words *"ingredient or component part"* are applicable only to those things which are acted upon in manufacture, to wit, personal property from which the manufactured product is being produced. In other words, they relate to the subject matter of

manufacture. The same is true of the applicability of the words *"loses its identity."* The words *"consumed or destroyed,"* however, are each applicable not only to that which is being acted upon, the subject matter of manufacture, but also to those things which act upon the subject matter, viz., that which is being produced by manufacture. They are applicable to all of those expendibles by which the process of manufacture is carried on.

In the interest of clarity we again quote the clause of the Act here in question:

" 'Retail sale' and 'sale at retail' do not include the sale of tangible personal property which becomes an ingredient or component part of, or which is consumed or destroyed or loses its identity in the manufacture of, tangible personal property for later sale by the purchaser, *but shall include fuel and electricity."* (Emphasis ours.)

If the foregoing sentence closed with the word *purchaser,* it might well be argued that the words *"consumed or destroyed"* being inserted between the words *"ingredient or component part of,"* and the words *"or loses its identity,"* which words and phrases are applicable only to those things which are being acted upon, likewise referred only to those things which were being acted upon. However, the sentence does not stop with the word *"purchaser,"* but continues with the following phrase which we have italicized above, *"but shall include fuel and electricity."*

Fuel and electricity when used in the manufacture of personal property are ordinarily not only consumed or destroyed but they also act upon the subject matter of manufacture and are not themselves acted upon as a subject of the process of manufacture. Furthermore, they do not ordinarily enter into or become an ingredient of the end product. (An apparent exception to the last statement is found in the fact that in the process of smelting iron for

casting, in which process coke is used for fuel, a portion of the carbon of which the coke is composed enters into and becomes an ingredient of the cast iron. This matter will be dealt with in the opinion in a companion case, *Androscoggin Foundry Company* v. *Ernest H. Johnson, State Tax Assessor,* which opinion is filed herewith.)

The foregoing phrase *"but shall include fuel and electricity"* would be meaningless and wholly unnecessary if the interpretation relied upon by the assessor were the correct one. The insertion of this phrase at the end of the sentence to our mind shows conclusively that the words *"consumed or destroyed"* are not used in a limited sense, but they refer to all those things which may be consumed or destroyed in the process of manufacture, whether or not they be those things which act upon the subject matter thereof, or those things which are acted upon therein and thereby. We cannot adopt the assessor's interpretation as set forth in Regulation 3 *supra.* To do so would require us to hold that the phrase *"but shall include fuel and electricity"* is meaningless and that it be treated as mere surplusage.

This question is a novel one. The decisions by courts of other states are not helpful. The language and provisions of their sales and use tax acts is not the same as that employed in our Act. As said by counsel for appellant in their brief and assented to by counsel for the tax assessor, "No tax statute contains the provision here in issue in the same or even substantially the same terms." As further stated by counsel for the tax assessor, "This statute is to be construed as unique. Our inquiry into its meaning will be little helped by the decisions of any other state. The legislature knew that it was a Maine statute, not derived from any one in present use."

Even as the scope of the regulations which may be promulgated by the assessor is limited to such as are consistent

with the Act, so too the function of this court is limited to interpreting the Act *as enacted.* As said by us in the very recent case of *The Coca-Cola Bottling Plants, Inc. Applts.* v. *Ernest H. Johnson, State Tax Assessor,* 147 Me. 327, "Our duties are judicial in nature. We must guard against trespassing upon the fields of the legislative and executive branches of government. We are not charged with responsibility for the economic and social effects of taxation. Our task is to ascertain and to give effect to the intention of the legislature." By the same token we cannot interpret an act of the legislature against its plain intent, as therein expressed, in order to facilitate the administration of the act. If a change in the incidence of the tax is desired either for economic reasons or to simplify the administration of the Act, such change must come from the legislature. It cannot be effected by rule or regulation of the assessor, nor can it be brought about by a decision of this court.

The case was reported to the Law Court with the stipulation "If it is determined that none of said items is taxable, judgment shall be for the appellant. Judgment to be without costs, interest or penalty." None of the items were purchased by the appellant at "retail sale" within the meaning of that phrase as defined in the Act. The appellant is not subject to a use tax with respect to any of the items in question. None of them were taxable within the meaning of the stipulation.

The entry will be

> *Appeal to Superior Court sustained.*
>
> *Judgment for appellant without costs. Tax abated.*
>
> *Case remanded to Superior Court for decree in accordance with opinion.*