**COMMUNITY TELECOMMUNICATIONS CORPORATION**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued May 6, 1996.

Decided Nov. 1, 1996.

William F. Hufnagel (orally), Hugnagel & Lake, Winthrop, for Plaintiff.

Andrew Ketterer, Attorney General, Stanley W. Piecuch (orally), Assistant Attorney General, Augusta, for the State.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

The State Tax Assessor (Assessor) appeals from a summary judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) in favor of Community Telecommunications Corporation (CTC) vacating the Assessor's assessment of taxes, penalties, and interest against CTC. On appeal the Assessor argues that the court erred in ruling that CTC's sale of separately charged repair, labor, and maintenance contracts are not subject to sales taxation pursuant to 36 M.R.S.A. § 1752 (1990 & Supp.1995). We agree, and vacate the court's judgment.

*Background*

CTC is a Maine corporation engaged in the sale and installation of telecommunications systems and the sale of related services including repair, labor, and maintenance contracts. In March of 1993 the Assessor examined CTC's business records for the purpose of verifying its sale and use tax liability for the period from October 1, 1989 through October 31, 1992. During this audit the Assessor treated CTC's sale of labor, repair, and maintenance contracts to its customers as the sale of a taxable service pursuant to 36 M.R.S.A. § 1752. That statute provides in pertinent part:

> 17-A **Taxable service.** "Taxable service" means:
>
> C. Telephone or telegraph service;
>
> 18-A. **Telephone or telegraph service.** "Telephone or telegraph service" means *all telecommunications or telegraph service,* including installation or use of telecommunication or telegraphic equipment ... "Telecommunications and telegraphic equipment" means any 2-way interactive communications device, system or process for transmitting or receiving electromagnetic signals and capable of exchanging audio, data base or textual information.

(emphasis added). As a result of this audit, the Assessor issued an assessment against CTC for additional sales tax, interest, and penalties in the amount of $55,010.53.

CTC's request that the Assessor reconsider his assessment was denied. Thereafter, CTC filed a petition for review of the Assessor's decision on reconsideration pursuant to 5 M.R.S.A. § 151 (Supp.1995) and M.R.Civ.P. 80C. Both parties subsequently filed motions for a summary judgment.

Relying on paragraph 14(B)(4)[1] of section 1752, which excludes from the definition of "sale price"[2] amounts received for services used in repairing property sold when such amount is separately charged, the court con-

---

1. Title 36 M.R.S.A. § 1752(14) (1990) states in pertinent part:

   (14) **Sale price.** "Sale price" means the total amount of a retail sale valued in money, whether received in money or otherwise.
   A. "Sale price" includes:
   (1) Services which are part of a retail sale; and
   (2) All receipts, cash, credits and property of any kind or nature and any amount for which credit is allowed by the seller to the purchaser, without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, losses or any other expenses.

   B. "Sale price" does not include:

   · · · ·

   (4) The price received for labor or services used in installing or applying or repairing the property sold or fabricated, if separately charged or stated;

2. Pursuant to 36 M.R.S.A. § 1811 (Supp.1995) the "sale price" of tangible property or service subject to tax is the "value" on which the sales tax is assessed. Section 1811 states in pertinent part:

   A tax is imposed on the value of all tangible personal property and taxable services sold at retail in this State.... Value is measured by the sale price, *except as otherwise provided.*

cluded that CTC's separate contracts for labor and maintenance were exempt from the state sales tax. Accordingly, the court granted a summary judgment in favor of CTC and the Assessor appeals.

## Discussion

In reviewing the grant of a motion for a summary judgment, we examine the evidence in a light most favorable to the nonprevailing party to determine whether the trial court committed an error of law. *Enerquin Air, Inc. v. State Tax Assessor,* 670 A.2d 926, 928 (Me.1996). The meaning and construction of statutory language presents a question of law. *International Paper Co. v. Town of Jay,* 665 A.2d 998, 1002 (Me.1995).

The State's power to tax is strictly construed in favor of the taxpayer. *Carlton v. Newman,* 77 Me. 408, 417, 1 A. 194 (1885). The interpretation of statutes levying taxes should not extend their provisions by implication beyond the clear import of the language used. *Portland Terminal Co. v. Hinds,* 141 Me. 68, 39 A.2d 5, 7 (1944) (quoting *Commonwealth v. Hutzler,* 124 Va. 138, 97 S.E. 775, 776 (1919)). As with the interpretation of any statute, we look first to the plain meaning of the statutory language to give effect to the legislative intent. In reviewing the plain language, we consider not only the individual provision at issue, but also "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the legislature, may be achieved." *Lucas v. E.A. Buschmann, Inc.,* 656 A.2d 1193, 1195 (Me. 1995) (quoting *Parker v. Bath Iron Works Corp.,* 644 A.2d 1037, 1039 (Me.1994)).

The Maine Sales and Use Tax Law imposes a sales tax on the value, generally measured by sale price, of all tangible personal property and taxable services sold at retail in this state that are not otherwise exempted. 36 M.R.S.A. §§ 1760, 1811 (1990 & Supp.1995). "Taxable service" is defined to include "[t]elephone or telegraph service." *36 M.R.S.A. § 1752(17-A)(C) (1990).* "Telephone or telegraph service," in turn,

means *all telecommunications or telegraph service,* including installation or use of telecommunication or telegraphic equipment...

(emphasis added). "All" means the "total entirety or extent of" the noun that it modifies. WEBSTER'S NEW INTERNATIONAL DICTIONARY 66 (1961). When used in statutes the term "all" is a wide-ranging word that "does not admit of exception, addition or exclusion." *Consolidated Freightways Corp. v. Nicholas,* 258 Iowa 115, 137 N.W.2d 900, 904 (1965). *See also Hewett v. Kennebec Valley Mental Health,* 557 A.2d 622, 624 (Me.1989) ("All means all," and is "all-encompassing."). Moreover, the term "service" is commonly defined to mean the "installation, maintenance or repairs done or guaranteed by a dealer or a manufacturer." WEBSTER'S NEW INTERNATIONAL DICTIONARY 2288 (1961). Given these definitions, the phrase "all telecommunications ... service" includes not only the sale of access to a telecommunication or telegraph service but also the repair and maintenance contracts sold by CTC.

We find nothing supportive of CTC's position in section 1752's definition of sale price. Title 36 M.R.S.A. § 1752(14) (1990) states that " '[s]ale price' means the total amount of a retail sale valued in money," which includes "services which are part of a retail sale," but not "the price received for labor or services used in installing or applying or repairing the property sold or fabricated, if separately charged or stated." By its terms, this provision excludes from the sales tax a service rendered as a "part of a retail sale" if the charges for the service are "separately charged or stated." CTC's sale of service contracts is not "a part of a retail sale." CTC's business is the sale of telecommunications equipment and related repair and maintenance services. As part of this business CTC sells service contracts to its customers, thereby promising to provide maintenance services to the purchaser. Unlike the circumstances contemplated by section 1752(14)(B)(4), CTC's sale of service, rather than "part of a retail sale," is a separate and distinct retail sale of a repair, labor and maintenance contract. Hence, section 1752(14)(B)(4)'s limitation on the taxability of

services that are "part of a retail sale" is inapplicable to CTC's sale of these contracts.

We also find no support for CTC's position in the usage in the sales and use tax statute of both the terms "service" and "services" in the definition of a "[t]axable service." Although it could be argued that the statute's use of the term "telephone service" rather than "telephone services" to describe the taxable activity demonstrates a legislative intent to tax only the provision of the public utility and not the auxiliary activities related to the production and distribution of the utility, general rules of statutory construction codified in our statutes preclude such a conclusion. "Common usage in the English language does not scrupulously observe a difference between singular and plural word forms. This is especially true when speaking in the abstract, as in legislation prescribing a general rule for future application." SUTHERLAND STAT CONST § 47.34 (5th Ed.1992). In recognition of this fact, our statutes contain a general interpretative provision mandating that "unless such a construction is inconsistent with the plain meaning of the enactment ... [w]ords of the singular number may include the plural; and words of the plural number may include the singular." 1 M.R.S.A. § 71(9) (1989). Given this rule of construction, we cannot ascribe determinative significance to the legislature's alternating use of "service" and "services" within section 1752(17–A).

■ Finally, the fact that the Assessor may have infrequently and inconsistently taxed these transactions in the past does not change our conclusion. As we stated some time ago:

> The mere failure of public officers charged with a public duty to enforce statutory and constitutional provisions in respect to the levy and collection of taxes ... should not be permitted to stand in the way of the correct administration of the law, or be construed to estop more diligent and efficient public officers when they attempt to perform their duty by bringing in to the revenue proper subjects of taxation that had theretofore been allowed to escape the payment of taxes.

*A.H. Benoit & Co. v. State Tax Assessor,* 202 A.2d 1, 6, 160 Me. 201, 210 (1964) (quoting *Claiborne Sales Co. v. Collector of Revenue,* 233 La. 1061, 99 So.2d 345, 347 (1957)). *See also UAH–Hydro Kennebec v. State Tax Assessor,* 659 A.2d 865, 867 (Me.1995) (plain meaning of statute controls over assessor's inconsistent administrative interpretation of statute); *Hudson Pulp & Paper Corp. v. Johnson,* 147 Me. 444, 88 A.2d 154, 156 (1952) ("Although the assessor is authorized ... to promulgate and enforce rules and regulations, ... the assessor by regulation can neither make that which is non-taxable under the Act taxable, nor can he render that which is taxable under the Act non-taxable."). The statute makes CTC's sale of telecommunication services in the form of repair, labor and maintenance agreements subject to Maine's sales tax. The fact that previous assessors may not have taxed these transactions does not affect the taxability of the contracts at issue here.

The entry is:

Judgment vacated. Remanded for entry of a summary judgment in favor of the State Tax Assessor.

WATHEN, C.J., and GLASSMAN, CLIFFORD, and RUDMAN, JJ., concurring.

DANA, Justice, with whom ROBERTS, Justice joins, dissenting.

36 M.R.S.A. § 1811 imposes a tax on the "value of all ... taxable services sold at retail in this State." Included within the definition of "taxable services" is "[t]elephone or telegraph service." 36 M.R.S.A. § 1752(17–A)(C) (1990). "Telephone or telegraph service" is further defined as, *inter alia,* "all telecommunications or telegraph service, including installation or use of telecommunication or telegraphic equipment." 36 M.R.S.A. § 1752(18–A) (Supp.1995). The Assessor takes the position that CTC's sale of repair, labor, and maintenance contracts are taxable because they fall within the meaning of "all telecommunications ... service." Because I do not agree that the phrase "all telecommunications ... service" was intended by the Legislature to include anything more than the actual provision of telephone (and other telecommunications) service, I respectfully dissent.

It is a fundamental rule of statutory construction that statutes imposing taxes are construed most strongly against the government and may not be extended by implication beyond the clear import of the language used. *Capitol Bank & Trust Co. v. City of Waterville*, ·343 A.2d 213, 218 (Me.1975); *see Camp Walden v. Johnson*, 156 Me. 160, 165, 163 A.2d 356, 358 (1960); *see also Blaney v. Town of Shapleigh*, 455 A.2d 1381, 1386 (Me. 1983) (recognizing principle that when tax statute is susceptible of more than one interpretation courts will interpret statute in light most favorable to citizen).

AMERICAN HERITAGE DICTIONARY (2d College Edition 1985) defines "telecommunication" as "communication by electronic transmissions of impulses." The meaning of "telecommunication service" has been defined in the statute to include both the installation and the use of telecommunication equipment. It has not been defined to include the transportation, storage, painting, repairing, servicing, or dismantling of that equipment. The Court appears to rule otherwise.

Furthermore, "repair and maintenance" cannot possibly be an "installation or use" of telecommunications equipment. Repair and maintenance is neither "installation" nor "use" as commonly understood.[1]

In addition, the fact that the Legislature expressly listed "installation" and "use" as subject to tax strongly implies that other things not mentioned, such as repair and maintenance, were intended to be excluded from the tax. *Cf. Violette v. Leo Violette & Sons, Inc.*, 597 A.2d 1356, 1358 (Me.1991); *Lee v. Massie*, 447 A.2d 65, 68 (Me.1982)

(following the maxim *"expressio unius est exclusio alterius"*—the expression of one thing is the exclusion of another—which maxim is "well recognized in Maine"). This principle of statutory construction is especially applicable here, given that the Legislature generally excludes separately charged repair services from the sales and use tax in 36 M.R.S.A. § 1752(14)(B)(4). Because of that general exclusion, if the Legislature had intended to tax the repair or servicing of telecommunications equipment, it certainly would have specifically provided for an exception to the general rule, either in section 1752(14)(B)(4) or in section 1752(18–A), just as it did in section 1752(18–A) for the installation of telecommunications equipment.

In view of the general exclusion of repair labor in section 1752(14)(B)(4), we cannot rely on the word "including" as implying that other things not listed, such as repair labor, should be taxed. Moreover, if the description of taxable items in section 1752(18–A) was not intended to be exclusive, neither a taxpayer, the Assessor, a court, nor anyone else could know what else is subject to tax. The Legislature would never have intended such uncertainty in a system of taxation. The list of taxable services in 36 M.R.S.A. § 1752(17–A) demonstrates that when the Legislature intends to tax a particular service, it knows how to define it with specificity.

I would affirm the judgment of the Superior Court.

---

1. In addition, repair is not "use" as defined in the Maine sales and use tax law. First, the statutory definition of the term "use" is confined to situations where the user owns the property he or she is using. 36 M.R.S.A. § 1752(21) (1990). That is not the situation in this case.

Second, the term "use" cannot possibly encompass repair and maintenance. If that were the case, there would be a use tax on repair and maintenance of all tangible personal property since Maine imposes a use tax on the "use" of all tangible personal property in this State, the sale of which would be subject to sales tax. 36 M.R.S.A. § 1861 (1990). That is clearly not the case.

Third, in 1995 the Legislature repealed the word "use" in section 1752(18–A). P.L.1995, ch.

477 (enacting 36 M.R.S.A. § 1752(18–B)). That legislation, entitled "An Act to Permit the Equitable Taxation of Leased Equipment" was accompanied by a Statement of Fact which stated that the purpose of the bill was to provide for "the elimination of the sales tax on *lease payments.*" Comm.Amend. A to L.D. 667, No. H–283, Statement of Fact (117th Legis.1995) (emphasis added). The Statement of Fact mentioned no other effects of removing the word "use." Thus, these legislative documents make it crystal clear that the word "use" previously found in section 1752(18–A) was in the statute for the sole purpose of taxing leases of telecommunications equipment.