STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: Augusta
Docket No. AP-13-26

BCN TELECOM, INC.,                    )
                                      )
            Petitioner,               )
                                      )     **ORDER ON THE PARTIES' MOTIONS**
                                      )     **FOR SUMMARY JUDMENT**
      v.                              )
                                      )
MAINE STATE TAX ASSESSOR,             )
                                      )
            Respondent.               )
                                      )
                                      )
                                      )
                                      )

BCN Telecom, Inc. ("BCN") appeals the Decision of the Maine Board of Tax

Appeals ("BOTA") affirming the finding of the Maine State Tax Assessor (the

"Assessor") that BCN owes service provider tax, and interest, on account of BCN's

failure to pay said tax with respect to presubscribed interexchange carrier charges

("PICCs"). Both parties have moved for summary judgment regarding the following two

issues: 1) are PICCS included in the sale price of telecommunications services and

subject to the service provider tax; and 2) if so, are PICCs exempt from the service

provider tax as constituting the sale of interstate telecommunications services. For the

reasons discussed below, the Court denies the Assessor's motion for summary judgment,

grants BCN's, and holds that PICCs are not taxable under the service provider tax.

## I.      Factual Background

A local exchange carrier ("LEC") provides telecommunications services to

customers in a defined geographic area, or local exchange area. (Stipulation of Facts

("Stipp.") ¶ 1.) The telecommunications service provided by a LEC is commonly known as "local service" or "local exchange service," and is a telecommunications service within the local exchange area. (*Id.* at ¶ 2.) A competitive local exchange carrier ("CLEC") is a LEC providing local exchange service that competes with incumbent local exchange carriers ("ILECS") and other CLECs.[1] (*Id.* at ¶ 5.) An interexchange carrier ("IXC") provides telecommunications services between exchange areas, and is commonly known as long distance service. (*Id.* at ¶ 6.)

BCN is a privately held telecommunications service provider company with its principal offices in New Jersey. (*Id.* at ¶ 12.) BCN is a reseller of telecommunications. (*Id.* at ¶ 13.) It contracts with local and long distance carriers and resells those services to customers in Maine and elsewhere. (*Id.*) On or about January 5, 2011, Maine Revenue Services ("MRS") sent BCN an Intent to Audit letter. (*See id.* at ¶ 17.) Thereafter, MRS began an audit of BCN that covered the period of March 1, 2008 to October 31, 2011 (the "Audit Period"). (*See id.* at ¶¶ 14-16.) During this period, BCN acted as both a CLEC and an IXC in Maine. (*Id.* at ¶ 14.)

As the audit progressed, it became clear that the primary issue concerned the taxation of PICCs and whether they were subject to service provider tax pursuant to 36 M.R.S. §§ 2551-2560. (*See id.* at ¶ 18.) During the Audit Period, BCN paid PICCs to long distance carriers from whom BCN purchased long distance services for resale. (*Id.* at ¶ 15.) BCN did not charge PICCs to any other carriers. (*See id.* at ¶ 16.)

---

[1] An ILEC is a LEC that was operating before February 8, 1996, i.e. the breakup of AT&T. (*Id.* at ¶ 3.) An ILEC owns and maintains the telephone lines and poles and other infrastructure within its local exchange area. (*Id.* at ¶ 4.) This infrastructure includes the "local loop," which is the line from the customer's premises to the office of the LEC. (*Id.*)

During the Audit Period, BCN had Maine customers with only local service, Maine customers with long distance service, and Maine customers with both local and long distance service. *(Id.* at ¶ 30.) BCN charges a fixed monthly rate for local service. *(Id.* at ¶ 31.) BCN charges for long distance usage, charging per call and per minute. *(Id.* at ¶ 32.) BCN charges long distance rates in Maine for interstate calls (calls terminating outside of Maine), as well as intrastate long distance calls (calls terminating within Maine). *(Id.* at ¶ 33.) BCN only charges PICCs to its business customers with multiple long distance lines.[2] *(Id.* at ¶ 35.) When a customer has long distance service through BCN, BCN establishes and maintains network readiness so that the customer has access to long distance service and can make a long distance call. (Resp.'s S.M.F. ¶ 84.)

The PICCs are charged as a monthly per line charge, which is typically a monthly rate of $2.95 per long distance line. (Stipp. ¶ 38.) BCN charges PICCs even if the customer does not make any long distance calls on that line during the month. *(Id.* at ¶ 39.) The amount of PICCs charged by BCN are discretionary, although there is a statutory ceiling on the amount that can be charged. (Resp.'s S.M.F. ¶ 25.) BCN determines the amount it will charge for PICCs based on maintaining a certain level of profit, evaluating and responding to price increases charged to BCN, and determining how to best pass that along to the customer. *(Id.* at ¶ 26.) BCN's default position is to charge PICCs unless it has been negotiated out of the agreement with the customer. *(Id.* at ¶ 27.) PICCs are listed on BCN's bills under "Other Charges," which, along with "Customer Level Charges" are competitive charges that can be negotiated out of a customer's agreement with BCN. *(Id.* at ¶¶ 29-30.) Only the amounts reflected in the

---

[2] BCN did not charge PICCs to residential customers or customers that only had local service because it is not permitted by federal law. *(Id.* at ¶¶ 36-37.)

lines that say "local" and "long distance" on BCN's bills represent charges for telecommunications services. (*Id.* at ¶ 31.) All of the other charges and fees on a customer's bills are not for electronic transmissions, i.e., telecommunications services. (*Id.* at ¶ 32.) If a customer that is charged PICCs does not pay the charges, then BCN has the option of terminating that customer's service. (*Id.* at ¶ 34.)

The Federal Communications Commission ("FCC") created the PICC, allowing carriers to recover a portion of the interstate local loop cost either from the IXC or from the end-user. (Stipp. ¶ 19.) During the audit, regulatory counsel for BCN sought and received input concerning the jurisdictional nature of PICCs from the FCC. (*Id.* at ¶ 20.) The FCC explained that it would not get involved in disputes between carriers and state regulatory bodies, but provided "some general advice as to universal service contribution requirements related to certain fees or end user charges, like [PICCs]." (Exhibit 5 to Stipp.) The general advice was: "[c]onsistent with [FCC] precedent, PICC charges are considered interstate revenues. They allow a carrier to recover a portion of the interstate local loop cost either from the interexchange carrier or from the end-user customer when the customer is not presubscribed to an interexchange carrier." (*Id.*)

The Assessor concluded that PICCs were not exempt from service provider tax and assessed BCN $41,296.96 in tax on the revenue received from PICCs and $7,778.60 in interest, for a total amount of $49,075.56. (*Id.* at ¶¶ 21-22.) Pursuant to 36 M.R.S. § 151, BCN sought reconsideration of the Assessment in a letter dated May 2, 2012. (*Id.* at ¶ 23.) The Assessment was upheld and an additional $2,036.54 in additional interest accrued for a total then due of $51,112.10. (*Id.* at ¶ 24.) BCN sought review of that decision through a written statement of appeal to Maine Board of Tax Appeals ("BOTA")

4

dated October 22, 2012. (*Id.* at ¶ 25.) In a Decision dated April 24, 2013, BOTA concluded that PICCs were not exempt from service provider tax and upheld the Assessor's Assessment of service provider tax (the "BOTA Decision"). (*Id.* at ¶ 26.) BCN appealed the BOTA Decision to the present Court. (*Id.* at ¶ 27.) The sole argument raised by BCN is that PICCs are not due and/or exempt from the service provider tax. (*Id.* at ¶¶ 28-29.)

## II. Discussion

### a. Standard of Review

The Court reviews the BOTA Decision de novo. 36 M.R.S. § 151-D(10)(I). In doing so, the Court makes its own determination as to all questions of fact and law, regardless of whether the facts, arguments or issues were raised during the proceeding being appealed so long as they are not barred by any other provision of law. *Id.* The taxpayer, in this case BCN, bears the burden of proof. *Id.* In other words, BCN bears the burden to show that PICCs are not subject to, or exempted from the service provider tax.

Pursuant to M.R. Civ. P. 56(c), a party may obtain summary judgment if there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. For purposes of summary judgment, a "material fact is one having the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573.

### b. Statutory Framework

As indicated above, the present dispute turns on questions of statutory interpretation. Specifically, the parties argue about whether PICCs are: 1) included in the sale price of telecommunications services and subject to the service provider tax; and 2)

5

if so, whether PICCs are exempt from the service provider tax as constituting the sale of interstate telecommunications service.

The service provider tax statute, 36 M.R.S. '§§ 2551-2560, imposes a tax upon the value of telecommunications services sold in Maine. 36 M.R.S. § 2552(1)(E). The service provider tax statute currently defines "telecommunication services," in pertinent part, as: "the electronic transmission, conveyance or routing of voice, data, audio, video or any other information or signals to a point or between or among points." 36 M.R.S. § 2551(20-A) (2015). Prior to July 18, 2008, the term "telecommunications services" was defined, in pertinent part, as "[t]he provision of 2-way interactive communications through the use of telecommunications equipment [but not] service originating or terminating outside [Maine]." 36 M.R.S. § 2551(20) (2008).

The value of the telecommunications services sold is measured "by the sale price." 36 M.R.S. § 2552(2). The sale price means:

> [T]he total amount of consideration, including cash, credit, property and services, for which personal property or services are sold, leased or rented, valued in money, whether received in money or otherwise, without any deduction for the cost of materials used, labor or service cost, interest, losses and any other expense of the seller. "Sale price" includes any consideration for services that are a part of a sale....

36 M.R.S. § 2551(15) (2015). "Sale price" does not include "[t]he amount of any tax imposed by the United States or the State on or with respect to the sale of a service, whether imposed upon the seller or the consumer[.]" 36 M.R.S. §2551(15)(D).

The service provider tax does not apply, however, "in connection with...[s]ales of interstate telecommunications service." 36 M.R.S. § 2557(34). Interstate telecommunications service is defined as a subset of telecommunications services, i.e. a "telecommunications service that originates in one state...and terminates in a different

6

state." 36 M.R.S. § 2551(5-B). Therefore, in order to be taxable PICCs must: 1) constitute part of the value of telecommunications services, which is measured by the sale price of the services; and 2) not constitute the sale of interstate telecommunications services.

### c. Whether PICCs are Included in the Sale Price of Telecommunications Services and Subject to the Service Provider Tax

The Assessor explains that the service provider tax is imposed on the value of each telecommunications service sold in Maine and that the amount of tax imposed upon each sale is measured by the sale price of the service. (Resp.'s Mot. Summ. J. 9.) The Assessor contends that PICCs are included in the sale price of telecommunications services because the PICCs are part of the total amount charged to customers on a monthly basis. (*See id.* at 10.) Furthermore, the Assessor argues that PICCs are charges BCN imposes to recover costs it incurs in providing telecommunications services and, as such, are an expense of the seller. (*Id.*) The definition of sales price, however, does not permit any deduction for expenses of the seller. (*Id.*) The Assessor argues that the same analysis and result are applicable under the earlier statutory definition of "telecommunications services." (*See id.* at 15-17.)

BCN argues that PICCs are not subject to the service provider tax because they are not telecommunications services and, as a result, cannot constitute part of the sale price of telecommunications services. (Pet.'s Mot. Summ. J. 4.) In particular, BCN argues that PICCs are not telecommunications services because there is no actual "transmission, conveyance or routing" as required by the definition of telecommunications services. (*Id.*) In support, BCN points out that the FCC categorized PICC charges as interstate revenue, not telecommunications services. (*Id.* at 4-5.)

7

Instead, BCN contends that PICCs constitute access charges to telecommunications services. (*Id.* at 5.) BCN explains that PICCs are charged at the same flat rate regardless of the number or duration of long distance calls made. (*Id.*) Indeed, BCN explains that PICCs are charged even if the customer makes no calls, i.e. utilizes no telecommunications services, in a given month. (*Id.*)

Similarly, BCN argues that PICCs cannot be characterized as part of the "sale price" of "telecommunications services" because PICCs are charged at the same rate every month, regardless of the customer's usage of telecommunications series. (*Id.* at 6.) An alternate construction could result in BCN being taxed for PICCs to customers in months when those customers made no calls or, in other words, utilized no telecommunications services. (*Id.* at 6.) To illustrate this argument, BCN offers the allegedly analogous situation of a members-only retail chain such as Sam's Club. (*Id.* at 7.) At Sam's Club, members pay a fee for the right to shop at the store. (*Id.*) The fee is payable regardless of whether the member ultimately purchases any products during the membership period and is independent of the amount of purchases they make, similar to PICCs. (*Id.*) In addition, if a member makes a tax-exempt purchase, such as milk, Sam's Club does not charge tax, similar to interstate calls which are tax exempt pursuant to 36 M.R.S. § 2557(34). (*Id.*) But if a member makes a taxable purchase, Sam's Club charges tax, similar to instate calls. (*Id.*) Under no circumstances, BCN contends, is the membership fee to Sam's Club a taxable item, nor is it taxed as part of the "sale price" of a taxable item. (*Id.*)

In its opposition, the Assessor contends that the narrow definition of telecommunications BCN advocates for is not supported by the language of the statute,

8

the legislative history or the factual record and would lead to absurd or illogical results. (Resp.'s Opp'n to Pet.'s Mot. Summ. J. 3.) First, the Assessor argues BCN ignores the term "services" in the definition of telecommunications services. (*Id.* at 5.) The Assessor argues that BCN is selling a service to its customers, not individual outgoing telephone calls, and that BCN's interpretation is tantamount to treating each sale of telecommunication services as the sale of tangible personal property. (*Id.*) In addition, the Assessor argues that the factual record confirms BCN is providing a service broader than just outgoing calls as evidenced by BCN's description of its long distance service as establishing and maintaining network readiness so that the customer has access to the long distance network and can make a call. (*Id.*) The Assessor argues this is consistent with Law Court precedent, which described the sale of telecommunications services as the sale of "access to" telecommunications services. (*Id.* at 5-6 (citing *Community Telecommunications Corp. v. State Tax Assessor*, 684 A.2d 424, 426 (Me. 1996)).) The Assessor also argues that BCN did not compute or remit its service provider tax liability for the Audit Period based on the definition of telecommunications services it now supports. (*Id.*)

The Assessor further argues that BCN disregards the term "routing" in its definition of telecommunications. It argues that in the context of the telecommunications definition, routing means setting the line of passage for information between or among points and that this is the exact description used by BCN to describe its long distance service. (*Id.* at 6.) The Assessor also contends that BCN fails to give meaning to the portion of the definition that says "between or among points," which includes outgoing as well as incoming calls as telecommunication services. (*Id.* at 7.)

9

Second, the Assessor argues that BCN's interpretation of telecommunications services is contrary to the legislative history of the service provider tax statute. (*Id.* at 7.) In support, the Assessor points to legislative history indicating that the enactment of the service provider tax statute in 2004 was not intended to make any substantive change from the former sales tax that was imposed on telecommunications services. (*Id.* at 7-8.) The Assessor similarly argues that the amendment to the definition of telecommunications services in 2008 to the present definition was intended to capture additional services, not to narrow the definition. (*Id.* at 8.) In particular, the amendment was made to capture voice over internet protocol ("VOIP") services. (*Id.* at 8.)

Third, the Assessor argues that BCN's interpretation could result in a customer receiving 10,000 calls in a month, paying BCN for the ability to receive those calls, but resulting in no taxable service because the customer did not make an outgoing call. (*Id.* at 9.) In other words, the Assessor argues that BCN is attempting to alter the event triggering the imposition of tax from the sale of the service, to an actual call. (*Id.*) Fourth, the Assessor argues that even if the Court adopted BCN's definition, BCN has not provided any factual evidence to support its theory. (*Id.* at 10.) Accordingly, the Assessor argues BCN cannot prevail under its definition of telecommunications service because it has not shown that its customers have not made any calls during any given month in the audit period. (*Id.* at 10-11.) Fifth, the Assessor argues that PICCs are not telecommunications services, but are included in the sale price of telecommunications services because they are charges to recover BCN's own expenses, and the definition of sale price does not permit any deduction for expenses of the seller. (*Id.* at 12.)

10

In its opposition, BCN contends that the parties agree PICCs are not charges for telecommunications services and—while the Assessor does not agree with the conclusion—they are accordingly not subject to the service provider tax. (Pet.'s Opp'n to Resp.'s Mot. Summ. J. 3.) BCN explains that since the parties agree PICCs are not telecommunications services, or calls, they must be considered charges for access to interstate telecommunications services. (*Id.* at 4.) Since PICCs are not charges for telecommunications services, the definition of sale price, which states in relevant part that the sale price is the total amount of consideration for which telecommunications services are sold, does not include PICCs. (*Id.* at 4-5.)

BCN also argues that just because a charge appears on a bill from a telecommunications provider does not, ipso facto, render it part of the statutory sale price of a telecommunications service. (*Id.* at 5.) Instead, the tax can only be collected if it is shown that the PICCs represent part of the sale price of telecommunications services. (*Id.*)

In its reply, the Assessor frames the question before the Court as whether the Legislature intended to tax amounts charged for the ability to make and receive calls, or whether the Legislature intended to tax only amounts charged for outgoing calls, should the customer make a call, and regardless of the number of calls a customer may receive. (Resp.'s Reply Supp. Mot. Summ. J. 2.) The Assessor contends the Legislature intended to tax the ability to make and receive calls when it imposed a tax on telecommunications services. (*Id.* at 2-3.) This is because a tax on the sale of telecommunications is a tax on the sale of "access to" telecommunications services. (*Id.* at 3 (citing *Cmty. Telecomms. Corp.*, 684 A.2d at 426).) The Assessor further contends that a sale is simply a transfer

11

or exchange for consideration and that a tax imposed on the sale of telecommunications services accrues whenever a customer purchases the ability to both make and receive calls. (*Id.* at 3.)

The Assessor further argues that BCN's position puts forward a narrow definition under which the Legislature only intended to tax a narrow subset of the actual services BCN sells; namely, the outgoing calls a customer may make in a month. (*Id.*) In addition, BCN's interpretation requires the Court to find that the Assessor cannot assess whether the sale of a taxable service has occurred, i.e. the exchange for consideration, until the customer subsequently makes an outgoing call—even if the customer receives numerous calls. (*Id.*) Finally, the Assessor reiterates its argument that the sale price of telecommunications services includes "any consideration" for services that are a part of a sale" and hence includes PICC charges. (*Id.* at 4.)

BCN replies that the definition of "telecommunications services" and "sale price" are not particularly complex and do not, by their plain terms, encompass the ability to make and receive calls. (Pet.'s Reply Supp. Mot. Summ. J. 1.) BCN argues that the Assessor's argument that "telecommunications services" is a broad definition, is not supported by the statutory language and, that if the Legislature intended, it could have— and would have—included in the definition of telecommunications services the ability to make and receive calls. (*Id.* at 2.) BCN also argues that the Assessor's focus on the term "routing" is unavailing as the PICCs are not charges for "routing" calls, but charges for access to the routing, transmission or conveyance of calls. (*Id.*)

BCN further argues that the Assessor misconstrues BCN's emphasis on outgoing calls. (*Id.* at 3.) This misunderstanding allegedly stems from the Assessor's focus on

outgoing, as opposed to incoming calls. (*Id.* at 3-4.) BCN explains that it focused on outgoing calls because it does not charge for incoming long-distance calls and thus, there is no taxable "sale price" for those calls. (*Id.* at 4.) If BCN did charge for incoming calls, they would be taxable telecommunications services subject to the service provider tax, absent any other exemptions. (*Id.*) Finally, BCN argues that whether or not any of BCN's customers did or did not make outgoing calls in a given month is irrelevant, as the question was brought up to illustrate a consequence of a statutory interpretation, not as the factual scenario before the Court and BOTA. (*Id.*)

"The State's power to tax is strictly construed in favor of the taxpayer." *Community Telecommunications Corp.*, 684 A.2d at 426 (internal quotation omitted). "The interpretation of statutes levying taxes should not extend their provisions by implication beyond the clear import of the language used." *Id.* (citations omitted). As with the interpretation of any statute, the court looks "first to the plain meaning of the statutory language to give effect to the legislative intent." *Id.* The words of a tax statute must be given their "plain and natural meaning" and construed in accordance with their "natural import in common and approved usage." *Great N. Nekoosa Corp. v. State Tax Assessor*, 540 A.2d 770, 772 (Me. 1998) (quotation marks omitted). All words are to be given meaning, and none are to be treated as surplusage. *Preti Flaherty Beliveau & Pachios LLP v. State Tax Assessor*, 2014 ME 6, ¶ 17, 86 A.3d 30.

Here, the Court finds that PICCs are *not* subject to the service provider tax because they are not part of the "sale price" of "telecommunications services" within the clear import of the service provider tax statutes. At its core, the issue presented is whether the Legislature intended preliminary charges for access to telecommunications

13

services (i.e. PICCs) to constitute part of the sale price of telecommunications services or whether those charges are an independent charge that has not been taxed by the Legislature. In resolving this question, the first step is to assess whether PICCs constitute telecommunications services in themselves. Based on the plain language of the current service provider statute, it is clear that PICCs do not constitute telecommunications services because they do not transmit, convey, or route any information. 36 M.R.S. § 2551(20-A). Similarly, under the version of the service provider statute in effect prior to July 18, 2008, it is clear that PICCs do not constitute telecommunications services because they do not involve the provision of 2-way interactive communications. 26 M.R.S. § 2551(20) (2008). Instead, PICCs are a monthly charge imposed on BCN customers with multiple long distance lines. (Stipp. ¶¶ 35, 38.) PICCs are designed to allow carriers, such as BCN, to recover a portion of their costs for the local loop, i.e. the line from the customer's premises to the office of the LEC. (Stipp. ¶¶ 4, 19-20.) Stated differently, PICCs are a charge that carriers may impose to recover some of their expenses incurred in maintaining the local loop. If a customer does not pay the PICCs, the provider may terminate the customer's service.

While PICCs do not constitute telecommunications services in themselves, the service provider tax statute is not imposed simply on telecommunications services. Instead, it is imposed on the "value" of telecommunications services. The value of telecommunications services, in turn, is defined as the "sale price" of the telecommunications service. Sale price is defined, in pertinent part, as "the total amount of consideration...for which...services are sold...without any deduction for the cost of...any other expense of the seller." 36 M.R.S. § 2551(15). The key question before the

14

Court then, is whether the clear import of the definition of "sale price" encompasses a broader scope of services and charges than those defined as telecommunications services by 36 M.R.S. § 2551(20-A) (2015) and former 36 M.R.S. § 2551(20) (2008).

While there are reasonable arguments on both sides, in light of the requirement to strictly construe the State's power to tax in favor of the taxpayer and the prohibition from extending statutes imposing taxes beyond the clear import of their language, the Court determines that the definition of "sale price," in the present circumstances, does not encompass PICCs. This is because the definition of "sale price" is directly linked to the total amount of consideration paid for telecommunications services. There is no "clear import" that "sale price" is designed to include additional charges, such as PICCs, that are related to—and serve as access charges to—telecommunications services. Accordingly, the Court finds that PICCs are *not* subject to the service provider tax because they are not part of the "sale price" of "telecommunications services" within the clear import of the service provider tax statute.

Although the parties raise additional arguments that support different results, the Court will rely upon the plain language of the statute. While the parties pose dueling hypotheticals, the Court will rely upon the plain language of the statute. On the one hand, the Assessor argues that the consideration for PICCs and telecommunications services would essentially disappear if BCN chose to charge a flat fee for its long distance telecommunications services. On the other hand, BCN argues that taxing it for PICCs in a month when a client does not make any long distance telephone calls would result in BCN being taxed when no actual telecommunications services were provided. While recognizing the merit to these concerns, the plain language of the statute must be

15

the primary focus of the analysis. This approach is supported by the lack of information the legislative history of the service provider tax statute brings to the present question. In particular, while the Assessor is correct that the scope of the statute expanded in 2004 to encompass VOIP services, it offers no insight into the question of whether PICCs constitute part of the "sale price" of telecommunications services.

Finally, the Court's determination that PICCs are not part of the "sale price" of "telecommunications services" within the clear import of the service provider tax statute is not controlled by the Law Court's opinion in *Community Telecommunications Corp. v. State Tax Assessor*, 684 A.2d 424. In that case, the Law Court found that a separate contract for the repair, labor, and maintenance of telecommunications services was taxable under a different statutory provision, 36 M.R.S. §1752. *Id.* at 426. At the time, section 1752 defined "telephone or telegraph service" as a "taxable service" and defined telephone or telegraph service as "all telecommunications or telegraph service, including installation or use of telecommunication or telegraphic equipment." *Id.* at 425. "Telecommunication and telegraphic equipment" was defined as "any 2-way interactive communications device, system or process for transmitting or receiving electromagnetic signals and capable of exchanging audio, data base or textual information." *Id.* Interpreting that language, the Law Court pointed out that telephone or telegraph service means "*all telecommunications or telegraph service,*" including installation or use of telecommunications equipment. *Id.* at 426 (emphasis in original). "All" means the "total entirety or extent of" the noun that it modifies and, when used in statutes, is a "wide-ranging word" that "does not admit of exception, addition or exclusion." *Id.* (citations omitted). Accordingly, the Law Court determined that the phrase "all

16

telecommunications…service includes not only the sale of access to a telecommunication or telegraph service but also the repair and maintenance contracts sold by [the company.]" *Id.* While *Community Telecommunications Corp.* arguably favors a broad interpretation of what constitutes a taxable service, it is of limited application to the present case because it turned on its own, distinct statutory language. Most importantly, the pertinent definition of telecommunications services in this case does not contain the key phrase "all" that was central to the Law Court's analysis in *Community Telecommunications Corp.* Accordingly, the Court finds that the PICCs charged by BCN are not subject to the service provider tax.

d. Even if PICCs Were Included in the Sale Price of Telecommunications Services, Which They are not, They Would Fit within the Exemption from the Service Provider Tax for the Sale of Interstate Telecommunications Service

As discussed above, the Court finds that PICCs are not included in the sale price of telecommunications services and are not subject to the service provider tax. However, assuming for the sake of argument that the Court agreed with the Assessor that PICCs were included in the sale price of telecommunications services, they would still not be taxable because PICCs fit within the exemption for the sale of interstate telecommunications services. Specifically, 36 M.R.S. § 2557(34) provides that the service provider tax "does not apply *in connection with* the "sales of interstate telecommunications service." (emphasis added). Interstate telecommunications service is defined as a subset of telecommunications services, i.e. a "telecommunications service that originates in one state…and terminates in a different state." 36 M.R.S. § 2551(5-B).

"[T]ax exemptions are construed narrowly," *Brent Leasing Co.*, 2001 ME 90, ¶ 15, 773 A.2d 457, and "not to be extended…to situations not clearly coming within the

17

scope of the exemption provisions," *Harold MacQuinn, Inc. v. Halperin*, 415 A.2d 818, 820 (Me. 1980). However, the service provider tax statutes, must be construed in a holistic approach so that "a harmonious result, presumably the intent of the Legislature, may be achieved." *McPhee v. Me. State Ret. Sys.*, 2009 ME 100, ¶ 23, 980 A.2d 1257 (quotation omitted). As a result, the term "sales" in 36 M.R.S. § 2557(34) should be construed in a harmonious way with the term "sale price" in 36 M.R.S. § 2551(15).

Here, it is clear that PICCs are charged in conjunction with interstate telecommunications services and, indeed, are not permitted by federal law to be charged to residential customers or customers that only have local service. (Stipp. ¶¶ 36-39.) It therefore stands to reason that *if* PICCs are included within the sale price of telecommunications services—such that they are initially subject to the service provider tax—PICCs are also exempt as a portion of the "[s]ales of interstate telecommunications services."

Indeed, this is the same reasoning employed by BOTA in *MCI Comms. Servs. Inc. v. Me. Revenue Servs.*, BTA-2013-7 (Me. Bd. Tax App. Sept. 13, 2013) (attached as Exhibit A to Pet.'s Mot. Summ. J.).[3] In that case, MCI explained, and MRS did not dispute, that MCI's "carrier cost recovery charges" ("CCRCs") and "property tax recovery charges" ("PTRCs") were charged only on interstate and international telecommunications services. *Id.* at 2, 4. These charges were calculated based upon the cost of those services, which the parties agreed were exempt from the service provider tax. *Id.* at 2. Against this backdrop, BOTA determined that MCI's CCRCs and PTRCs

---

[3] This decision is currently on appeal in the Kennebec County Superior Court.

were exempt from the service provider tax because both charges were part of the sale price of exempt interstate services.[4] *Id.* at 8. Specifically, BOTA explained that:

> Since subsections 33 and 34 [of 36 M.R.S. § 2557] exempt the *sale* of international and interstate telecommunications services, we conclude that those subsections must logically exempt the *sale price* of both services. As both the CCRC and PTRC are charges that constitute part of the *sale price* of the exempt services, subsections 33 and 34 exempt both charges from [the service provider tax.)

*Id.* at 8 (emphasis in original).[5]

Accordingly, even assuming for the sake of argument that PICCs were part of the "sale price" of telecommunications services, they would be exempt from the tax as connected to the "sales of telecommunications services."

## III. Conclusion

The Court **denies** the Assessor's motion for summary judgment and **grants** BCN's because it finds that PICCs are not subject to the service provider tax since they are not part of the "sale price" of telecommunications services" within the clear import of the tax. Furthermore, even if PICCs constituted part of the "sale price" of "telecommunications services," they would be exempt from the service provider tax as connected to the "sales of telecommunications services." Accordingly, the Court

---

[4] *MCI* similarly found that under the service provider statutes before their amendment on July 18, 2008, the CCRCs and PTRCs were exempt because they were not part of the consideration paid for the purchase of intrastate telecommunications services and hence not part of the taxable sales price of the services. *Id.* at 6.

[5] As indicated, *MCI* concluded that the CCRC and PTRC are charges that constitute part of the "sale price" of both services. *Id.* at 8. While that finding supports a determination that PICCs are also part of the sale price of telecommunications services, it bears noting that this does not appear to have been a contested issue in *MCI*. In other words, the parties agreed, i.e. did not dispute, that CCRCs and PTRCs constitute part of the sale price of telecommunications services. As discussed *supra* section II(c), the Court determines that PICCs are not part of the sale price of telecommunications services.

19

reverses the underlying decision from the Board of Tax Appeals and remands with instructions to abate the assessment.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

**Dated: October 5, 2015**

**SUPERIOR COURT JUSTICE**

Date Filed 06/28/13 Kennebec Docket No. AP-13-26 F
County

Petition for Review **J. Murphy**
80C

BCN Telecom, Inc. vs. Maine Revenue Services

Plaintiff's Attorney Defendant's Attorney

-Michael Smith, Esq. Kimberly Patwardhan, AAG
-Michael L. Sheehan, Esq. ~~Scott W. Boak, AAG~~ (Withdrawn)
PO Box 9546 6 State House Station
Portland, ME 04112 Augusta, ME 04333

-John Sullivan, III, Esq. (Pro hac vice) ~~Paul Bourget, Esq.~~
80 Maiden Lane, Suite 1502 ~~134 State House Station~~
New York, NY 10038 ~~Augusta, ME 04333~~

Date of Entry

| | |
|---|---|
| 7/1/13 | Petition For Review, filed 6/28/13. s/Sheehan, Esq. |
| 7/18/13 | Entry of Appearance for State Tax Assessor, filed. s/Boak, AAG |
| 7/18/13 | Letter stating that the Respondent will not file a responsive pleading unless ordered to do so by the court, as there is no record to file, filed. s/Boak |
| 7/23/13 | Standard Scheduling Order issued and mailed to Petitioner and AAG Boak. Discovery deadline 10/23/13 Justice Assigned, Michaela Murphy |
| 9/18/13 | Amended Scheduling Order issued. Discovery deadline 3/23/14. Copy to Atty Sheehan and AAG Boak |
| 12/3/13 | Letter requesting conference regarding discovery dispute, filed 11/27/13. s/Boak, AAG |
| 12/11/13 | Phone conference scheduled for 12/11/13 at 3:30. |
| 12/17/13 | Phone conference not held. |
| 12/17/13 | ORDER, Murphy, J. (12/11/13) Court informed parties will submit agreed-upon Protective Order. Copy to Atty Sheehan and AAG Boak. |
| 1/8/14 | Consented-to Motion for Protective Order, filed 1/7/14. s/Boak AAG |
| 1/10/14 | PROTECTIVE ORDER, Murphy, J. Copy to Atty Sheehan and AAG Boak |
| 1/28/14 | Letter requesting order to resolve discovery dispute, filed 1/21/14. s/Boak, AAG |

| 1/28/14 | Letter as follow-up to discovery issues in previous letter, indicating the parties conferred and agree to and request order, filed 1/21/14. s/Boak, AAG |
| 1/31/14 | ORDER, Murphy, J. (1/29/14) (re: Letters filed 1/21/14) Approved. AAG Boak to prepare order for Court's signature. Copy to Atty Sheehan and AAG Boak |
| 2/4/14 | Draft Discovery Order filed by AAG Boak. |
| 2/12/14 | DISCOVERY ORDER, Murphy, J. (2/9/14) 1) Petitioner shall produce all outstanding documents requested by Respondent no later than 2/14/14. 2) The discovery deadline is 8/25/14. Copy to Atty Sheehan and AAG Boak |
| 5/7/14 | Letter entering appearance for Respondent, filed. s/Patwardhan, AAG |
| 7/1/14 | Letter withdrawing appearance as co-counsel for Respondent, filed. s/Boak, AAG |
| 9/10/14 | Consented-to Motion to Stay Deadlines, filed 9/5/14. s/Patwardhan, AAG |
| 9/12/14 | ORDER, Murphy, J. The Court stays the deadlines in the scheduling order dated 9/18/13. The clerk shall schedule a conference of counsel to discuss and set new deadlines for the future course of proceedings. Copy to Atty Sheehan and AAG Patwardhan |
| 9/12/14 | Phone conference scheduled 9/26/14 at 3:30. Notice sent to Atty Sheehan and AAG Patwardhan |
| 9/30/14 | ORDER, Murphy, J. (9/26/14) (Hearing/Conference Record) By 10/31/14, the parties shall file a Stipulated Record. If they are not able to do so, they shall advise the Court by that date and confer with the Court telephonically on that same date at 12:30 p.m. Copy to Atty Sheehan and AAG Patwardhan |
| 10/31/14 | ORDER, Murphy, J. (Hearing/Conference Record) Parties shall each file Motion for Summary Judgment by 12/12/14, any opposition by 1/9/15, replies by 1/16/15. Oral argument to be provided. This Order shall supplant prior Scheduling Order. Copy to Atty Sheehan and AAG Patwardhan |
| 11/4/14 | Entry of Appearance, filed. s/Smith, Esq. |
| 12/11/14 | Petitioner's Consented-To Motion for Enlargement of Time to Move for Summary Judgment, filed 12/5/14. s/Smith, Esq. |
| 12/18/14 | ORDER, Murphy, J. (12/16/14) Motion is GRANTED. The parties' deadline to move for summary judgment shall be 12/19/14. Copy to Atty Sheehan and AAG Patwardhan |

| 12/18/14 | Respondent's Consented-to Motion for Enlargement of Time to Move for Summary Judgment, filed. s/Patwardhan, AAG |
|---|---|
| 12/24/14 | ORDER, Murphy, J. (12/19/14) (re: Motion for Enlargement filed 12/18/14) GRANTED. Parties' deadline to move for summary judgment shall be 1/9/15, Oppositions 1/23/15, Replies 1/30/15. Copy to Atty Sheehan and AAG Patwardhan |
| 1/7/15 | Unopposed Motion for Admission *Pro Hac Vice* of John W. Sullivan, III, Esq., with Affidavit, filed 1/2/15. s/Smith, Esq. |
| 1/13/15 | ORDER, Murphy, J. (1/10/15) Attorney Sullivan is admitted to practice and shall at all times be associated with Michael Sheehan, Esq., Michael Smith, Esq., and the law firm of Preti Flaherty Beliveau & Pachios. Copy to Atty Sheehan, Atty Sullivan, and AAG Patwardhan |
| 1/14/15 | -Joint Stipulation of Facts and Stipulated Exhibits, filed 1/9/15. s/Patwardhan, AAG s/Smith, Esq. -Respondent's Motion for Summary Judgment, Supporting Statement of Material Facts, filed 1/9/15. s/Patwardhan, AAG |
| 1/14/15 | Petitioner's Motion for Summary Judgment, filed 1/9/15. s/Smith, Esq. |
| 1/23/15 | Petitioner's Opposition to Respondent's Motion for Summary Judgment, Response to Respondent's Statement of Material Facts, filed. s/Smith, Esq. |
| 1/23/15 | Respondent's Opposition to Petitioner's Motion for Summary Judgment, Additional Statement of Material facts, filed. s/Patwardhan, AAG |
| 2/3/15 | Petitioner's Reply to Respondent's Opposition to Motion for Summary Judgment, Petitioner's Response to Respondent's Additional Statement of Material Facts, filed 1/30/15. s/Smith, Esq. |
| 2/3/15 | Respondent's Reply Memorandum in Support of its Motion for Summary Judgment, Respondent's M.R. Vic.P. 56(i) Statement, filed 1/30/15. s/Patwardhan, AAG |
| 2/12/15 | Petitioner's Reply to Respondent's Opposition to motion for Summary Judgment, Petitioner's Response to Respondent's Additional Statement of Material Facts, filed 2/3/15. s/ Smith, Esq. |
| 4/14/15 | Hearing on Motions for Summary Judgment scheduled for 6/2/15 at 9:00 a.m. Notice of Hearing sent to Atty Smith, Atty Sullivan, AAG Patwardhan, and Atty Bourget. |
| 5/26/15 | Petitioner's Consented-To Motion for Continuance of Summary Judgment Hearing, filed 5/20/15. s/Smith, Esq. |
| 5/28/15 | Letter advising that Maine Board of Tax Appeals is not a party and will not appear on June 2, filed. s/Bourget, Esq. |

6/10/15    ORDER, Murphy, J. (5/27/15)
           Petitioner's Consented-to Motion for Continuance of Summary Judgment hearing is
           GRANTED.
           Copy to Atty Smith, Atty Sullivan, AAG Patwardhan

7/2/15     Hearing on Motions for Summary Judgment scheduled for 8/16/15 at 9:30.
           Notice of Hearing sent to Atty Smith, Atty Sullivan, AAG Patwardhan

8/14/15    Hearing scheduled for 8/18/15 at 9:30.  (Notice sent 7/2/15)

8/18/15    Hearing held 8/18/15, J. Murphy presiding.
           Michael Smith, Esq.; John Sullivan, III, Esq.;  Kimberly Patwardhan, AAG
           Courtroom 4, 9:33:24 to 10:10:08
           Under advisement

10/6/15    ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT,
           Murphy, J. (10/5/15)
           The Petitioner's motion for summary judgment is **granted**.
           The Respondent's motion for summary judgment is **denied**.
           The Court reverses the underlying decision from the Board of Tax Appeals and remands
           with instructions to abate the assessment.
           Copy to Atty Smith, Atty Sullivan, AAG Patwardhan
           Copy to Repositories