Raymond BOULET, et al.

v.

STATE TAX ASSESSOR.

Supreme Judicial Court of Maine.

Argued March 17, 1993.

Decided May 21, 1993.

Martin I. Eisenstein (orally), Brann & Isaacson, Lewiston, for plaintiff.

Michael E. Carpenter, Atty. Gen., Mary Jean Crouter (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

DANA, Justice.

Raymond and Lorraine Boulet appeal from a judgment of the Superior Court (Androscoggin County, *Alexander, J.*) affirming a determination of the State Tax Assessor that, as Maine residents, they were not entitled to a credit for income taxes paid to the Commonwealth of Massachusetts as a consequence of their having won the Massachusetts lottery. We vacate the judgment of the Superior Court.

The Boulets are residents of Lewiston and have, at all relevant times, been domiciled in Maine. In March of 1985, they purchased, in Salisbury, Massachusetts, a winning ticket in the Massachusetts State Lottery. In March of 1989, they received a check in the amount of $69,640.75.[1]

The Commonwealth of Massachusetts collected an income tax of $3,527 on the Boulets' 1989 winnings. On their 1989 Maine income tax return, the Boulets took a credit in the amount of $3,527 pursuant to 36 M.R.S.A. § 5217–A (Supp.1992) which provides, in relevant part:

A resident individual is allowed a credit against the tax otherwise due under this Part ... for the amount of income tax imposed on that individual for the taxable year by another state of the United States ... *with respect to income derived from sources in that taxing jurisdiction* which is also subject to tax under this Part.

36 M.R.S.A. § 5217–A (Supp.1992) (emphasis added). The State Tax Assessor disallowed the credit. The Boulets filed a petition for reconsideration, which the Assessor denied. The Boulets sought judicial review pursuant to M.R.Civ.P. 80C by the Superior Court, which affirmed the disal-

**1.** Apparently this was the fifth installment of an annuity used to distribute their winnings.

lowance of the credit. From that judgment, the Boulets now appeal.

■ The Boulets contend that section 5217-A is clear; a credit is available for money paid in income tax to another jurisdiction on income derived from sources in that taxing jurisdiction. The Boulets purchased the ticket in Massachusetts; the lottery has no employees or presence outside of Massachusetts; the sale of all lottery tickets is confined to the borders of Massachusetts; the property that generates the lottery income is permanently situated in Massachusetts; the payment to the Boulets was made from Massachusetts; and the laws of Massachusetts govern the sale and distribution of Massachusetts lottery tickets. The income the Boulets received is thus derived from a Massachusetts source. The statute is clear on its face that an amount equal to any tax paid to Massachusetts on such income should be credited toward the resident's Maine tax liability. The Boulets are therefore entitled to the section 5217-A credit.

The Assessor argues that the Boulets were not entitled to the credit because income generated from owning a winning lottery ticket is income derived from an intangible and that in such circumstances the doctrine of *mobilia sequuntur personam* (movables follow the person) should be employed; the source or situs of income derived from intangibles is the domicile of the owner of the intangible. According to that doctrine, the source of the lottery income is the Boulets' domicile; Maine.

The Assessor also argues that since the phrase "income derived from sources in [another] jurisdiction" is not defined in section 5217-A, we should look to another section of the tax code to determine the legislative intent. 36 M.R.S.A. § 5142 (1990) provides, in relevant part:

1. **General.** The adjusted gross income of a nonresident derived from sources within this State shall be the sum of the following:

. . . .

3. **Intangibles.** Income from intangible personal property including annuities, dividends, interest and gains from the disposition of intangible personal property, shall constitute income derived from sources within this State only to the extent that such income is from property employed in a business, trade, profession, or occupation carried on in this State.

Reading § 5142 into § 5217-A, the Assessor contends that Maine law permits Maine residents to take a credit for taxes paid to another jurisdiction only to the extent that the tax was paid on income from property employed in a business, trade, profession, or occupation carried on in that other state.[2] We are unpersuaded by this argument.

Section 5142, at the outset, rejects the theory behind *mobilia sequuntur personam* in that income earned by a nonresident "from intangible personal property including annuities, dividends, [and] interest . . . shall constitute income derived from sources within this State. . . ." The section then limits that rejection by the qualifying phrase "only to the extent that such income is from property employed in a business, trade, profession, or occupation carried on in this State." If Maine had embraced *mobilia sequuntur personam*, then all income earned by a nonresident from an intangible interest evidenced by a lottery ticket or a certificate of stock would not "constitute income derived from sources within" Maine. Additionally, the Assessor has offered no compelling reason why we should transport the tax policy set forth in section 5142 into the tax policy set forth in section 5217-A.

■ Section 5142 provides for the taxation of income earned by nonresidents of Maine. Section 5217-A, on the other hand, allows for a credit against the income tax properly due this state. The policy considerations underlying a statutory provision imposing a tax are very different from those underlying a credit provision. Maine

---

**2.** For the purposes of this appeal we assume, without deciding, that the Massachusetts Lottery Commission is not such a "business."

cannot constitutionally tax the income of a nonresident unless the income is rationally related to this state. *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 273, 98 S.Ct. 2340, 2344, 57 L.Ed.2d 197 (1978). The state is free, however, to provide a credit against any income tax owed it, with no constitutional ramifications to creating either a broad or narrow credit provision. Tax credits are a matter of legislative grace that can be broadened, constricted or eliminated at any time. *See Silverman v. Town of Alton,* 451 A.2d 103, 105 (Me.1982); *Murphy v. Taxation & Revenue Dept.,* 94 N.M. 90, 607 P.2d 628, 631 (1979). It is, therefore, not unreasonable to assume that the legislature intended a tighter definition of those sources of Maine income taxable to nonresidents than those sources of foreign income for which Maine residents receive a credit for taxes paid to that foreign jurisdiction.

The entry is:

Judgment vacated.

Remanded for entry of a judgment reversing the decision of the State Tax Assessor.

All concurring.