STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
DOCKET NO. AP-16-0039

ERIC V. WARNQUIST,   )
                     )
and,                 )
                     )
                     )   **ORDER ON RESPONDENT'S**
ROSAMOND C. WARNQUIST, )  **MOTION FOR SUMMARY**
                     )   **JUDGMENT**
       Petitioners,  )
                     )
   v.                )
                     )
STATE TAX ASSESSOR,  )
                     )
       Respondent.   )

## I.    BACKGROUND

This case is a Rule 80C action brought by petitioners Eric and Rosamond Warnquist, seeking review of the Tax Assessor's determination that they were not entitled to the full Section 5217-A credit requested on their 2012 and 2013 tax returns. *See* 36 M.R.S.A. § 5217-A (2010). Petitioners also seek to avoid paying penalties and interest if the court finds that the credit was properly adjusted.

The facts presented to the court are relatively straight forward and generally agreed upon. Petitioners are Maine residents who earned income from two rental properties they owned in the county of Rogaland of the country of Norway (the "Properties"). (Resp.'s S.M.F. ¶¶ 1-2.) The first property was a single-family house located at 34 Bogenessvein ("Property 1"). (Resp.'s S.M.F. ¶ 4.) The second property was an industrial complex located at Jattaflatten 10 ("Property 2"). (Resp.'s S.M.F. ¶¶ 5-6.)

1

Petitioners earned rental income from the Properties in both 2012 and 2013. (Resp.'s S.M.F. ¶ 9.) Additionally, Property 1 was taken by expropriation, the Norwegian equivalent of eminent domain, by the City of Stavanger in 2013. (Resp.'s S.M.F. ¶ 7.)

Petitioners paid income tax to Rogaland Norway on both the rental and expropriation income from the Properties. (Resp.'s S.M.F. ¶ 9.) In 2012, Petitioners paid $208,860 in income tax to Rogaland. (Resp.'s S.M.F. ¶ 10.) In 2013, Petitioners paid $238,374 in income tax to Rogaland. (Resp.'s S.M.F. ¶ 11.) Rogaland taxed Petitioners on their gross income and did not allow Petitioners any deductions. (Resp.'s S.M.F. ¶ 48.)

On their federal tax returns for these years, Petitioners reported the rental income from the Properties and deducted certain expenses. (Resp.'s S.M.F. ¶ 12.)

### a. Petitioners' 2012 Taxes

In 2012, Petitioners reported $8,339.12 in income from Property 1 and deducted $59,052.72 in expenses. (Resp.'s S.M.F. ¶ 13.) For Property 2, Petitioners reported rental income of $1,099,262.68 and deducted $106,627 in expenses. (Resp.'s S.M.F. ¶ 14.) Including income and expenses from two other properties unrelated to the instant matter, Petitioners reported their Schedule E income as $948,262.35. (Resp.'s S.M.F. ¶ 15.) Petitioners reported their federal adjusted gross income, which includes income from interest, dividends, and pensions/annuities, totaled $1,026,451.98 in 2012.[1] (Resp.'s S.M.F. ¶ 18.) Petitioners then reported their income tax as $306,374.32 and claimed a foreign tax credit in the same amount for taxes paid to Rogaland. (Resp.'s S.M.F. ¶¶ 19-19A.)

On their 2012 Maine tax return, Petitioners reported a federal adjusted gross income of $1,026,452. (Resp.'s S.M.F. ¶ 21.) Petitioners then reported their Maine adjusted gross income as

---

[1] This number was mistakenly reported on Petitioners' 2012 tax return due to a transcription error. The correct amount should have been $1,025,738.38. (Resp.'s S.M.F. ¶ 16.)

$1,037,381. (Resp.'s S.M.F. ¶ 22.) Petitioners claimed a standard deduction in the amount of $12,850 and accordingly reported their total Maine tax as $85,429 in 2012. (Resp.'s S.M.F. ¶¶ 23-24.)

Petitioners claimed a tax credit pursuant to Section 5217-A for income tax paid to Rogaland in the total amount of their taxes owed, $85,429. (Resp.'s S.M.F. ¶ 25.) The Worksheet for Credit for Income Tax Paid to Other Jurisdiction ("Worksheet") used to calculate this credit instructs taxpayers to compare their Maine adjusted gross income stated in line 1 with income sourced to and taxed by another jurisdiction "included in line 1" in line 2. (Resp.'s S.M.F. ¶ 27.) The Worksheet further provided, "The income considered taxed by the other jurisdiction is income, after deductions, that is analogous to Maine adjusted gross income (federal adjusted gross income plus or minus income modifications)." (Resp.'s S.M.F. ¶ 26.) Specifically, taxpayers are directed to calculate the percentage of other income taxed by foreign jurisdictions by dividing the income sourced to other jurisdictions by their total Maine adjusted gross income. (Worksheet for Credit for Income Tax Paid to Other Jurisdiction (the "Worksheet"), Pet. Ex. 2 at 1.) Taxpayers are entitled to credit of the lesser of either the multiplication of this percentage and their total taxes or the taxes paid to the other jurisdiction on the income subject to Maine tax. *See* M.R.S.A. § 5217-A.

### b. Petitioners' 2013 Taxes

In the year 2013, Petitioners similarly reported rental income and expenses from the Properties on their federal returns. (Resp.'s S.M.F. ¶ 29.) Petitioners reported $4,122.49 in income from Property 1 and deducted $33,614.01 in expenses. (Resp.'s S.M.F. ¶ 30.) For Property 2, Petitioners reported rental income of $381,190.24 and deducted $118,684.97 in expenses. (Resp.'s S.M.F. ¶ 31.) Including income and expenses from the two other unrelated properties, Petitioners

3

reported their Schedule E income as $229,498.70. (Resp.'s S.M.F. ¶ 32.) Petitioners also reported the income from the expropriation of Property 1 as a capital gain in the amount of $683,148.32. (Resp.'s S.M.F. ¶ 33.) Including an unrelated capital gain, Petitioners reported a total Schedule D income of $691,716.56. (Resp.'s S.M.F. ¶ 34.)

Petitioners reported their federal adjusted gross income, which includes both the Schedule D and Schedule E incomes as well as income from interest, dividends, and pensions/annuities, as $990,317.85 in 2013. (Resp.'s S.M.F. ¶ 37.) Petitioners then reported their income tax as $306,324.57 and claimed a foreign tax credit in the same amount for taxes paid to Rogaland. (Resp.'s S.M.F. ¶¶ 36-36A.)

On their 2013 Maine tax return, Petitioners reported a federal adjusted gross income of $990,318. (Resp.'s S.M.F. ¶ 38.) Petitioners then reported their Maine adjusted gross income as $993,366. (Resp.'s S.M.F. ¶ 39.) Accordingly, Petitioners reported their total Maine tax as $76,784 in 2013. (Resp.'s S.M.F. ¶ 40.)

Again, Petitioners claimed a tax credit pursuant to Section 5217-A for income tax paid to Rogaland in the total amount of their taxes owed, $76,784. (Resp.'s S.M.F. ¶ 41.) Although slightly re-formatted, the Worksheet's instructions remained the same as in 2012. (Resp.'s S.M.F. ¶¶ 42-43.)

c. **Adjustment of Petitioners' Taxes and Subsequent Review**

In 2014, Maine Revenue Services ("MRS") audited Petitioners' 2012 and 2013 federal and Maine income tax returns. (Resp.'s S.M.F. ¶ 45.) MRS first found that Petitioners had used the incorrect standard deduction on their 2012 Maine tax return, and accordingly increased it from $12,850 to $13,050. (Resp.'s S.M.F. ¶ 46.)

4

Next and most importantly to the instant case, MRS determined that Petitioners had miscalculated their 5217-A credit on both their 2012 and 2013 Maine tax returns by overstating the income that was taxed in both Maine and Rogaland. (Resp.'s S.M.F. ¶ 47.) Specifically, while Petitioners had reported all of the income taxed by Rogaland on their 5217-A Worksheet ($1,099,262.68 in 2012 and $1,172,702 in 2013) because Rogaland taxed Petitioners' gross income, MRS determined that only the income subject to tax in Maine, i.e. Petitioners' net income: the total income minus the deductions available in Maine ($941,922 in 2012 and $916,161 in 2013), was creditable. (Resp.'s S.M.F. ¶¶ 49-53.)

Accordingly, MRS adjusted Petitioners' 5217-A credits from $85,429 to $76,927 in 2012 and from $76,784 to $70,810 in 2013. (Resp.'s S.M.F. ¶¶ 51, 54.) MRS explained that Petitioners were not subject to Maine tax on all of the income taxed by Rogaland, but only the portion of that income after the available deductions ($941,922 in 2012 and $916,161 in 2013), and thus were not entitled to a credit for the total amount of their taxes owed. (Resp.'s S.M.F. ¶ 55.) The Assessor then issued assessments for tax, interest, and substantial understatement penalties in the following amounts: for 2012, $7,804 in tax, $911.25 in interest, and $1,482.76 in penalties; for 2013, $5,974 in tax, $248.07 in interest, and $418.18 in penalties. (Resp.'s S.M.F. ¶ 57.)

Petitioners timely requested that the Assessor reconsider these assessments pursuant to 36 M.R.S.A. § 151(1). (Resp.'s S.M.F. ¶ 58.) In a decision dated September 21, 2015, the Assessor upheld the assessments in full. (Resp.'s S.M.F. ¶ 59.)

The Warnquists then appealed this decision to the Board of Tax Appeals (the "Board"). (Resp.'s S.M.F. ¶ 60.) During this appeal, MRS determined that the amount of tax assessed for 2012 was overstated by $66 and agreed to abate $66 in tax with a commensurate reduction in interest and penalties. (Resp.'s S.M.F. ¶ 61.) Otherwise, the Board upheld the assessments and

5

subsequent reconsideration decision in full on July 21, 2016. (Resp.'s S.M.F. ¶ 62.) Following the Board's decision, Petitioners' appealed to this court. Respondent then moved for summary judgment.

### a. Petitioner's Opposing Statement of Material Facts

Petitioners' denials of Respondent's statement of material fact and opposing statement of material fact are deficient in several important ways. First, Petitioners do not explain their rationales for their denials of Respondent's statements of material fact, only citing to Eric Warnquist's deposition. As far as this court can discern, Petitioners only dispute material facts either based on (1) the disputed issue of the correct calculation of the section 5217-A credit (Resp.'s; S.M.F. ¶¶ 65-67, 73, 75) or (2) whether the worksheet by provided by MRS for the calculation of the credit contained erroneous information. (Resp.'s; S.M.F. ¶¶ 28, 44.) These contentions are both legal issues to be decided by the court. *Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 612 (Me. 1992) (citation omitted). Additionally, the cited evidence, Warnquist's deposition, does not sufficiently contradict Respondent's statements of material fact. M.R. Civ. P. 56(h).

In their opposing statement of material facts, Petitioners cited eight material facts in dispute: (1) whether MRS has adjusted the amount Petitioners were required to pay in several years; (2) whether MRS has modified their initial assessments against the Warnquists; (3) whether MRS has "compromised its claims to the alleged taxes due from the Petitioners in the past;" (4) whether the Worksheet's instructions are subject to multiple interpretations; (5) whether Petitioners have acted in good faith in applying the instructions; (6) whether Petitioners calculations of the foreign tax credit is correct; (7) whether the Worksheet's instructions mandated Petitioners' tax credit calculations; and (8) whether Petitioner "relied exclusively on the

6

instructions provided to them by MRS." (Pet.'s Opp'g S.M.F. ¶¶ 1-8.) As with Petitioners' denials, most of these statements (¶¶ 3, 4, 5, 6, 7) are legal conclusions for the court to decide, not proper statements of material fact. *Diversified Foods, Inc.*, 605 A.2d at 612 (Me. 1992) (citation omitted). Further, the cited evidence in relation to the remaining statements (¶¶1, 2, 8) - again, Eric Warnquist's deposition - does not support the respective contentions made. M.R. Civ. P. 56(h). Consequently, these statements will be disregarded by the court.

## II.    SUMMARY JUDGMENT STANDARD

In reviewing decisions of the Board of Tax Appeals, the court must conduct a de novo review and determination of all questions of fact and law. 36 M.R.S.A. § 151-D(10)(I). Additionally, when there are no disputes as to material facts, a tax matter is appropriately presented and decided on summary judgment. *Estate of Di Millo v. State Tax Assessor*, 1999 ME 154, ¶ 2, 739 A.2d 385 (citation omitted).[2] Because the parties do not dispute the facts, only the validity of their respective interpretations of the statute and worksheet, this case is properly addressed on summary judgment.

To survive a motion for summary judgment, Petitioners must "establish a prima facie case for each element of [their] cause of action." *Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995) (citation omitted). Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "A material fact is one that can affect the outcome of the case. A genuine issue of

---

[2] Petitioners contend that summary judgment is a "very extreme remedy." (Pet. Opp. Resp. Mot. Summ. J. 4.) (citing *Utica Mut. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 468 A.2d 315, 317 (Me. 1983)). However, modern Maine law provides that summary judgment is no longer an extreme remedy, and is instead "simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 1, 784 A.2d 18. This is especially true where, as here, the parties agree upon the facts. *See Hallissey v. Sch. Admin. Dist. No. 77*, 2000 ME 143, ¶ 21, 755 A.2d 1068.

material fact exists when the fact finder must choose between competing versions of the truth." *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821 (internal citation and quotation marks omitted). When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* Because there are no disputed material facts, the sole issue is whether Respondent is entitled to judgment as a matter of law.

"The meaning and construction of statutory language presents a question of law." *Community Telecomm. Corp. v. State Tax Assessor,* 684 A.2d 424, 426 (Me. 1996). When analyzing tax statutes, the court must look to the plain meaning of the language to give effect to legislative intent. *Foster v. State Tax Assessor,* 1998 ME 205, ¶ 7, 716 A.2d 1012 (citation omitted).

Finally, it is well settled that "taxation is the rule and tax exemption is the exception . . . ." *Connecticut Bank & Trust Co. v. City of Westbrook,* 477 A.2d 269, 271 (Me. 1984). Thus, a taxpayer seeking a credit must establish that the claimed credit is "'unmistakably within the spirit and intent' of the statute." *Foster*, 1998 ME 205, ¶ 8, 716 A.2d 1012 (quoting *Episcopal Camp Found., Inc. v. Town of Hope,* 666 A.2d 108, 110 (Me. 1995)).

## III.    DISCUSSION

### a.  5217-A Credit Availability

The central issue to this current action is the interpretation of 36 M.R.S.A. 5217-A, which provides a tax credit for income taxes paid to foreign jurisdictions. This section provides:

> A resident individual is allowed a credit against the tax otherwise due under this Part, excluding the tax imposed by section 5203-C, for the amount of income tax imposed on that individual for the taxable year by . . . any political subdivision of a foreign country that is analogous to a state of the United States with respect to income subject to tax under this Part that is derived from sources in that taxing jurisdiction. . . . The credit, for any of the specified taxing jurisdictions, may not exceed the proportion of the tax otherwise due under this Part, excluding the tax imposed by section 5203-C, that the amount of the taxpayer's Maine adjusted gross

8

income derived from sources in that taxing jurisdiction bears to the taxpayer's entire Maine adjusted gross income . . . .

36 M.R.S.A. § 5217-A. Thus, the Statute has two parts. First, the statute gives taxpayers a credit for income tax paid to any political subdivision of a foreign country that is analogous to a state with respect to income subject to Maine tax. The parties do not dispute that Rogaland, Norway is a political subdivision of a foreign country that satisfies this section.

However, this credit is limited by the second provision of the Statute: the credit cannot exceed a specific proportion of total taxes owed. Specifically, the credit cannot be larger in relation to the total amount of taxes owed than the proportion that the taxpayer's adjusted gross income from the foreign jurisdiction bears to the taxpayer's entire Maine adjusted gross income.

Petitioners' reading of the statute ignores all of the relevant language except for: "A resident individual is allowed a credit against the tax otherwise due under this Part . . . for the amount of income tax imposed on that individual for the taxable year by . . . any political subdivision of a foreign country that is analogous to a state of the United States." 36 M.R.S.A. § 5217-A. Given the clear and unambiguous limits of the credit found in the provisions immediately following this language, Petitioners' interpretation is clearly misguided.

Here, Rogaland taxed the Petitioners' gross income. Petitioners used the total amount of income taxed by Norway in the above calculation instead of the amount of their Maine adjusted gross income that was taxed by Norway, i.e. their gross income minus allowable deductions. Because they were allowed deductions in Maine and not in Norway, the proportion of income taxed by Norway to the taxpayer's Maine adjusted gross income was greater than 1, meaning that Petitioners claimed a credit for the total amount of their Maine taxes.

However, as discussed above, Petitioners were required to calculate the credit using only the amount of income taxed by Norway that was also a part of their Maine adjusted gross income.

9

This means that Petitioners were required to compare the *net* income of the Properties to their Maine adjusted gross income, not the *gross* income actually taxed by Rogaland.

Petitioners submit several arguments as to why they were entitled to a tax credit in relation to the gross income taxed by Rogaland. First, Petitioners cite to the Law Court's decision in *Boulet v. State Tax Assessor*, 626 A.2d 33 (Me. 1993). In *Boulet*, the petitioners were a married couple who received lottery winnings in Massachusetts. *Id.* at 33. The petitioners requested a 5217-A credit for taxes paid to Massachusetts on the winnings, but were denied by the tax assessor. *Id.* After finding that the income was sourced to Massachusetts, the Law Court held that the petitioners were entitled to the credit, stating, "The statute is clear on its face that an amount equal to any tax paid to Massachusetts on such income should be credited toward the resident's Maine tax liability." *Id.* at 34.

Petitioners' reliance on *Boulet* is misplaced. In *Boulet*, both Maine and Massachusetts taxed the same amount of income. Here, Rogaland taxed more of Petitioners' income than Maine because Rogaland taxed the Petitioners' gross income while Maine taxed Petitioners' net income. The statute is clear on its face that the credit is only applicable "with respect to income subject to tax under this Part." 36 M.R.S.A. § 5217-A. The *Boulet* decision does not contradict this caveat. Implicit in the Law Court's holding was that any credit should only be applied to the tax liability *for the same income*, and not other income that may be completely unrelated.

Petitioners were given a credit for all of their income sourced to Norway. It is their other income, such as from municipal bonds and pension earnings, that remains subject to Maine tax because it was not sourced to and taxed by another jurisdiction. Consequently, Petitioners have not been "double taxed" on any of their income.

10

Next, Petitioners argue that the Income and Property Tax Convention, Nor.-U.S., Dec. 3, 1971, 23 U.S.T. 2382 (the "Convention"), entered into between the United States and Norway in 1971 prevents the Assessor's reading of the statute. Specifically, Petitioners cite to two provisions of the Convention. First, Article 22(2) provides, "a resident of one of the Contracting States may be taxed by the other Contracting State on any income from sources within that other Contracting State and only on such income . . . ." This provision is entirely inapplicable to Petitioners. The section clearly only limits states' ability to tax non-residents to income sourced to that state. Here, Petitioners are Maine residents, not non-residents. Thus, Article 22(2) does not apply.

Next, Petitioners draw the court's attention to a language in the Convention that provides that the Convention "shall not be construed as to restrict in any manner any . . . credit, or other allowance now or hereafter accorded." Convention Art. 22(1). Again, this language is irrelevant. The Assessor did not deny Petitioners' credit based on the Convention. Instead, the Assessor relied on the plain language of 36 M.R.S.A. § 5217-A, the statute that entitles Petitioner to the credit in the first place. Thus, the Convention does not provide any grounds for invalidating the instant assessments.

Because MRS correctly applied 36 M.R.S.A. § 5217-A, the Board's decision is affirmed. The assessed taxes are upheld in full.

### b. Penalty and Interest Abatement

Petitioners next argue that even if they are not entitled to the full credits requested, that the penalties and interest assessed against them for miscalculating the credits should be abated. Because penalties and interest are subject to different standards for abatement, they are addressed separately below.

### i. Penalty Abatement

11

Abatement of penalties assessed on taxpayers is governed by 36 M.R.S.A. § 187-B. This statute provides, "The assessor shall waive or abate [penalties] if grounds constituting reasonable cause are established by the taxpayer or if the assessor determines that grounds constituting reasonable cause are otherwise apparent." 36 M.R.S.A. § 187-B(7). The statute includes in its nonexclusive definition of reasonable cause: "A. The failure to file or pay resulted directly from erroneous information provided by the Bureau of Revenue Services; . . . F. The taxpayer has supplied substantial authority justifying the failure to file or pay . . . ." 36 M.R.S.A. § 187-B(7)(A, F).

Petitioners argue there is reasonable cause to waive their penalties because they relied on instructions provided by MRS on the 5217-A credit Worksheet that led them to believe that they were entitled to claim credit for the full amount of tax they paid to Rogaland.[3]

Notwithstanding the relative clarity of tax instructions, the record demonstrates that Petitioners were on notice of the Assessor's reading of the credit well before they filed their 2012 and 2013 returns. Specifically, Petitioners requested credits the same way in the tax years 2007-2011 and were likewise assessed substantial overpayment penalties. (Resp.'s S.M.F. ¶ 68.) In 2009, the MRS sent two letters to the Petitioners explaining how to calculate 5217-A credits in relation to Petitioners' 2007 return. (Resp.'s S.M.F. ¶ 69-70.) The calculation was also described in detail in a reconsideration decision in 2011 concerning Petitioners' 2010 tax return and in a letter regarding the tax year 2011. (Resp.'s S.M.F. ¶¶ 71-74.)

Contrary to Petitioners' contention, the Worksheet is not ambiguous. In line 2, it expressly requires taxpayers to list "Income sourced to and taxed by other jurisdictions *included in line 1*."

---

[3] Petitioners repeatedly argue that they have acted in "good faith" in filling out their tax returns. (Pet Opp. Resp.'s Mot. Summ J. 8-9.) However, the standard is not whether they acted in good faith, it is whether they had "reasonable cause" to file incorrectly. 36 M.R.S.A. § 187-B(7). The court will treat Petitioners' arguments as related to any reasonable cause for their improper filing.

(Worksheet for Credit for Income Tax Paid to Other Jurisdiction (the "Worksheet"), Pet. Ex. 2 at 1.) (emphasis added). [4] The deductions allowed by Maine but taxed by Rogaland are not included in line 1, which is Petitioners' Maine adjusted gross income. Further, the worksheet's instructions provide, "The income considered taxed by the other jurisdiction is *income, after deductions, that is analogous to Maine adjusted gross income (federal adjusted gross income plus or minus income modifications)*." (Worksheet 2.) (emphasis added).

Petitioners argue that the information provided in the worksheet was erroneous, however, the court finds that the language is in conformity with the statute and not erroneous. It correctly explains how to calculate the Section 5217-A credit. As a matter of law, there is no reasonable cause due to any error found in the instructions.

Additionally, Petitioners argue that there is substantial authority for their position. That is incorrect. Although "substantial authority" is not defined in the statute, the Law Court has cited to federal law for guidance:

> [F]ederal tax law defines the term as "an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the "more likely than not" standard . . . but more stringent than the reasonable basis standard . . . . There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatment is substantial in relation to the weight of authorities supporting contrary treatment."

26 C.F.R. §§ 1.6662-4(d)(2), (3) (1996).

Petitioners have not put forward any authority construing this credit or those similar from other states in the manner they seek to interpret it. As a matter of law, Petitioners have not put forth a prima facie case that there is substantial authority for their position.

---

[4] Although not addressed by the parties, the court notes that line 3 of the worksheet instructs, "if line 2 is greater than line 1, enter 1.0000." (Worksheet 1.) Although this may not be possible given that line 2 by definition cannot be greater than line 1, the court does not find that this instruction is erroneous as to give Petitioners reasonable cause for their incorrect calculation.

13

Given the prior notice given to the Petitioners and the explicit directions found in the worksheet, Petitioners have not shown any reasonable cause to abate the assessed substantial understatement penalties. The court affirms the assessed penalties in full.

### ii. Interest Abatement

36 M.R.S.A. § 186 governs interest abatement. Unlike penalties, this section gives "broad discretion" to MRS and does not require a showing of reasonable cause. *Victor Bravo Aviation, LLC v. State Tax Assessor*, 2012 ME 32, ¶ 10, 39 A.3d 65. Instead, the assessor may abate or waive interest "[i]f the failure to pay a tax when required is explained to the satisfaction of the assessor . . . ." 36 M.R.S.A. § 186. The difference between the two sections "indicates a legislative purpose to allow taxpayers to obtain a waiver or abatement of penalties based on a lower threshold of proof than is necessary to obtain a waiver or abatement of interest." *Victor Bravo Aviation, LLC*, 2012 ME 32, ¶ 10, 39 A.3d 65. The satisfactory explanation standard is "highly discretionary" and "not easily met by the taxpayer." *Victor Bravo Aviation, LLC*, 2012 ME 32, ¶ 14, 39 A.3d 65.

As discussed above in relation to penalties, Petitioners have not demonstrated that they are entitled to interest payment abatement to the court's satisfaction. They were on notice of the correct application of section 5217-A and improperly read the worksheet. As a matter of law, Petitioners have not articulated a satisfactory explanation to this court. Consequently, the Board's decision related to interest abatement is affirmed.

14

## IV.    CONCLUSION

For the reasons set forth above, Respondent's motion for summary judgment is granted.

The Board's decision is affirmed in full.

The clerk shall make the following entry on the docket:

Respondent's motion for summary judgment is hereby GRANTED. The decision of the Maine Board of Tax Appeals is AFFIRMED.


SO ORDERED.

DATE: March 7 , 2018

_____
John O'Neil, Jr.
Justice, Superior Court


ENTERED ON THE DOCKET ON: _3/7/18_

15